## Barker *et al. versus* Dinsmore.

1. A man representing himself connected with Barker & Co. contracted with Dinsmore for wool for them : to be consigned to them to Pittsburg and paid for there. The man representing to Barker & Co. that he was Dinsmore's son, contracted to sell them wool ; it arrived at Pittsburg before Dinsmore ; was delivered to the man, and by him to Barker & Co., who paid him. The jury found that the sale was not to the man on his own responsibility, but as agent for Barker & Co. *Held*, that the ownership of Dinsmore was not divested.

2. Sale of goods tortiously obtained without the owner's consent, gives the purchaser no title against the owner, although purchased for a fair consideration and in the usual course of trade, without any suspicious circumstance to awaken inquiry.

3. An owner cannot be divested of his property without his consent, unless he has placed it in the custody of another and given him an apparent right to dispose of it.

November — 1872.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* No. 188, to October and November Term 1871.

This was an action of replevin brought December 6th 1869, by John Dinsmore against William Barker, Jr., and Jesse B. Kilgore, trading as William Barker, Jr., & Co., for 45 sacks of wool, containing 7632½ pounds, of the value $3816.25.

The defendants gave a claim-property bond and retained the goods.

The cause was tried October 18th 1870, before Hampton, P. J.

The plaintiff resided near Burgettstown, Washington county, being also near Dinsmore Station, on the Pan Handle Road. In November 1869, he owned the wool in question. On a Friday in the latter end of that month, a man saying his name was Barker, and representing himself as a cousin of William Barker, Jr., of the firm of William Barker, Jr. & Co., who were wool merchants in Pittsburg, came to plaintiff's house and asked if he had wool for sale. Being informed that he had, the man said he would return on the next Monday, which he did, and agreed, after some negotiation, to purchase from the plaintiff 6000 pounds of wool, more or less. He produced to the plaintiff the business card of defendants, viz. :

WILLIAM BARKER, JR. & CO.,

(LATE WILLIAM BARKER),

DEALERS IN DOMESTIC WOOLS,

No. 72 Smithfield Street,

PITTSBURG, PA.

[Barker *v.* Dinsmore.]

(On which he endorsed :)

"November 30th. Bought of John Dinsmore 6000 pounds of wool, more or less, for 50 cents per pound, delivered in the city of Pittsburg.                    WM. BARKER & CO.,
                                        No. 72 Smithfield street."

At this time he brought with him 43 wool-sacks, marked "Wm. Barker, Jr., & Co., Pittsburg, Pa."

On inquiry by the plaintiff how he should be paid, the man told him he could come into Pittsburg on Saturday and get his money.

On the day after this transaction, the plaintiff received a note as follows :—

                                        "Stuebenville, Nov. the 31st.

"MR. DINSMORE—*Sir :* Haveing to go to the above place last eve on busyness, I thought that I would drop you a note as I pass your place; the agent at Pitt. thinks it will be the third day before the wool can be unloaded, and perhaps it would be safer for you to come on Monday for fear you should not get home Saturday. You spoke of writing, but you need not trouble yourself writing, as the agent will forward the Bill to us immediately.

            Yours,    .    '    BARKER & CO.,
                                        Pittsburg."

The bill of lading was :—

            "Pittsburg, Cincinnati and St. Louis Railway Co.,
                                        Dinsmore, Dec. 3d 1869.

"Received from John Dinsmore, the following packages, in apparent good order, marked as per margin, which the Pittsburg, Cincinnati and St. Louis Railway Co., agree to deliver, in like order, the incidental damages of the railroad, fire in cars and at stations excepted, to *Barker & Co.,* or order, at the company's freight station at Pittsburg, he or they paying freight and charges (at the rate established as per company's tariff sheet), as it arrives in the cars. The company will not be responsible for leakage of molasses, when caused by fermentation, nor for leakage of any kind, nor for loss or damage arising from the incidental dangers of railroad transportation, unless the same be proved to have occurred by the gross negligence of their agents or servants.

| *Marks.* | *Articles.* |
|---|---|
| Wm. Barker, Jr., & Co. | 45 sacks Wool, |
|  | 7789 lbs. |
|  | J. D. ALLINDER, *Agent.*" |

By arrangement with the man, the plaintiff shipped the wool in his own name, consigned to defendants, and directed the agent at Dinsmore Station to ship the wool just as the sacks were marked.

[Barker *v.* Dinsmore.]

The plaintiff had all the wool shipped by Saturday afternoon, and came into Pittsburg on Monday. He went to Barker & Co.'s wareroom and inquired if Dinsmore's wool had come to hand; he was informed that they had bought a lot of wool on Saturday from a man calling himself Martin Dinsmore, who said it was his father's wool, and they had paid him for it on that day at 40 cents; defendants informed plaintiff that the man said his father had sold his farm and wished to sell his wool; they said the young man had produced samples, and they had given sacks to him. Plaintiff held the bill of lading as security till he should come to Pittsburg.

The agent at Dinsmore's Station shipped the wool to Barker & Co., Pittsburg. After the wool was unloaded it was delivered by the railroad agent to the man, and by him to Barker & Co.'s drayman, who gave a receipt, viz. :

"December 4th 1869.—Received of the P. C. & St. L. Rw. Co., in good order, for Barker & Co., 45 bales of wool.

"Freight, $23.52.          T. ╳ O'BRIEN."

The railway company gave notice to Barker & Co. on Saturday morning of the arrival of the wool.

The foregoing, with much more to the same points, was the evidence of the plaintiff.

The defendant's evidence was that on the 29th of November 1869 a man calling himself Martin Dinsmore came to their store with samples of wool, which he said he had out at home, five miles back of Burgettstown, Washington county; they agreed to purchase of him at 45 cents per pound, if the wool was equal to the samples. He asked them to send sacks by the Pan Handle Railroad, and he would be at the station and meet them; he directed them to be marked "Martin Dinsmore, Burgettstown Station." On Saturday he came with O'Brien, the drayman, with a load of wool; after examining the wool, the defendants expressed dissatisfaction with its quality, but they finally arranged to take it at 40 cents per pound, and paid him $3050 in cash for 7625 pounds; he left about 3½ o'clock on Saturday afternoon. On Monday about 10 o'clock the plaintiff came to defendants' store, and asking for Mr. Barker, was referred to that member of the firm; plaintiff said he was not the Barker who had been to his place and bought the wool, and who said he was a cousin of William Barker, who was lying sick of typhoid fever, and had heard plaintiff had a lot of wool, and plaintiff had sold it to him for 50 cents per pound.

The defendants gave other evidence, which in some of its details was contradictory of plaintiff's evidence.

The following were plaintiff's points and their answers:—

1. If the jury believe, from the evidence, that the plaintiff agreed with a party, representing himself to be a member of the firm of Wm. Barker, Jr., & Co., to sell his wool to said firm, and said

representation was false and fraudulent, and made without the knowledge or authority of said firm, no title to the wool passed to said William Barker, Jr., & Co.

Answer : "This point is affirmed."

4. Even if the man calling himself Martin Dinsmore did not represent to the defendants, or either of them, that he was the son of John Dinsmore, and the wool was his father's, but claimed to be the owner of the wool himself, and the railway company delivered the wool to the drayman, T. O'Brien, as the agent of the pretended Martin Dinsmore, or to the man Martin Dinsmore himself, his possession of the wool thus acquired being without right or color of right, he could not vest a title in the defendants by a sale to them.

Answer : "As we have said in our general charge, if this pretended Martin Dinsmore, or Barker, acquired no title to this wool by his alleged purchase from the plaintiff, he could convey no title to the defendants, no matter how he obtained the possession from the railroad company, it could give him no title, because it had no title to convey."

The following are points of the defendants and their answers :—

2. If the jury find, from the evidence, that the plaintiff, John Dinsmore, sold the wool in controversy to a person represented by the name of "Barker" or "Dinsmore," and delivered the wool according to and in pursuance of the terms of the contract of sale, the property vested in the purchaser in so far as to enable him to make a good and valid sale of the wool to any bonâ fide purchaser, who had no notice or knowledge of the fraud practised by him.

Answer : "This point is sufficiently answered in the general charge."

3. If the plaintiff sold the wool in controversy to Martin Dinsmore, alias Barker, believing him to be a member of the firm of Wm. Barker, Jr., & Co.,defendants, and in pursuance of the contract of sale delivered the wool at Dinsmore station to be delivered by the railroad to Barker & Co., and the wool was delivered to Dinsmore, alias Barker, at Pittsburg, and he sold it to the defendants at a fair market price, without knowledge or notice of the alleged fraud, they have a good title to the wool, and the plaintiff cannot recover.

Answer : "The court decline to affirm this point in the terms in which it is stated, but refer to our general charge."

4. If, from all the evidence in the case, the jury believe that the defendants purchased the wool in controversy from Martin Dinsmore, alias Barker, after he had received it from the railroad company, at a fair market price, without knowledge or notice of any fraudulent acts or pretences, they have a good title to the wool, and the plaintiff cannot recover.

[Barker v. Dinsmore.]

Answer: " This point is refused in the shape it is presented. If he (Martin Dinsmore) acquired no title to this wool by his alleged purchase from John Dinsmore, he could convey none to the defendants. See our general charge."

5. This action of replevin cannot be maintained by the plaintiff against the defendants if the jury find from the testimony that the defendants are bonâ fide purchasers from plaintiff's vendee, for a valuable consideration, in the usual course of trade, and without notice of the alleged fraud by which said vendee obtained the delivery and possession of the wool from plaintiff.

6. If the jury find, from the evidence, that the man from whom defendants purchased the wool obtained possession of it with the consent of plaintiff, and with the intention, on plaintiff's part, to change the property, and that defendants purchased it from said first-named party for a valuable consideration, without notice of frudulent intentions or misrepresentations on his part, they are bonâ fide purchasers, and entitled to the property as against plaintiff, and the verdict of the jury should be in favor of the defendants.

7. If the jury find, from the evidence, that the man representing himself to be Martin Dinsmore obtained possession of the wool in controversy from plaintiff, with his consent, and with the intention on his (plaintiff's) part to change the property, under a contract by which plaintiff sold said wool to the said Martin Dinsmore at fifty cents per pound, to be delivered in Pittsburg, and to be paid for by said vendee after delivery, the plaintiff paying freight thereon from Dinsmore's station, Washington county, to Pittsburg, and that said vendee, under said contract, received the wool at Pittsburg, and there sold and delivered the same to defendants for a fair and valuable consideration, paid in cash on delivery, without notice of any fraud or misrepresentation in the premises, then defendants thereby acquired a good title to the wool, and the jury should find for them.

Answer: " These points are sufficiently answered in the general charge, where we have said substantially, that if Martin Dinsmore, alias Barker, acquired title to this wool by his alleged purchase from plaintiff, he could convey that title to the defendants; but if he did not, then he had no title to convey to them, and the plaintiff would be entitled to recover."

The court amongst other things charged:—

" * * * [The plaintiff, as we have stated, took the bill of lading in his own name, as consignor, with the name of the defendants' firm as consignees. Thus far, at least, it would seem the title to this wool, as well as the right of possession, remained in the plaintiff, and he might, at any time, have stopped it *in transitu*, before it reached this city, and down to the time it was delivered to the defendants. There is no evidence going to show that the

plaintiff ever delivered this wool to this pretended partner, or in any way placed it under his control. That party had nothing to do with the shipping the wool, nor had he any right whatever to touch it, if he was not a member or agent of the firm of William Barker, Jr., & Co., and it is clear from the testimony of the defendants that he was neither. Whatever control, therefore, he undertook to exercise over it, for his own individual interest, was done without the slightest authority from the plaintiff.]

" A great deal of evidence has been given as to the way this wool was received from the railroad company, and delivered to the defendants, but it is not deemed necessary to state it in detail. From the undisputed evidence in the cause, it is manifest that a gross fraud has been perpetrated by this stranger, and the question now to be determined is, on whom shall the loss fall—on the plaintiff, or defendants ? This is a mixed question of law and fact—the former is for the court to determine, the latter is for the jury.

"[Let us consider, for a few moments, what induced Dinsmore, the plaintiff, to make the alleged sale of his wool, and ship it to Pittsburg. Did he intend to sell it to this stranger, as an individual, on his own responsibility, without reference to his connection with the firm of William Barker, Jr. & Co., or was it his understanding, from all the attending circumstances, that he was dealing with a member, or agent of the firm ? If he had known the fact that this man was not authorized by the defendants, to purchase this wool for them, would he have shipped it to Pittsburg, and run the risk of getting his pay from the defendants ?]

"Now, if you believe, from the evidence in the cause, that this young man, calling himself 'Barker,' was not a member of the defendants' firm, nor their agent, and that he falsely represented himself to the plaintiff as a member of that firm, or their agent, and authorized to buy wool for them, and at the same time produced a number of sacks, exhibited them to him, and that they had been given to him by the defendants, bearing the name of the firm thereon—and by reason of such fraudulent representations and conduct, he induced the plaintiff to part with the actual possession of his wool, and deliver it to the railroad company, to be carried to Pittsburg, to be delivered to the firm of William Barker, Jr., & Co., no title to this wool passed, either to the said pretended 'Barker,' nor to the firm of William Barker, Jr., & Co., the consignees in the bill of landing, and if the plaintiff did not part with his title, this pretended purchaser acquired no title, and consequently could convey no title to these defendants.

" The law on this subject is too well settled to need the citation of many authorities. No man can be deprived of his title to personal property by fraud. * * *

"[These authorities show conclusively that if this pretended 'Barker' had no title to this wool, he could, and did, pass no

[Barker v. Dinsmore.]

title to the defendants, by his sale to them.   You will apply the law as we have now stated it, to the evidence in this case, and if you find that this pretended Barker, in the transaction with the plaintiff, John Dinsmore, acquired no title for himself, individually, he could convey no title to the defendants, and your verdict will be for the plaintiff.   But if you find from the evidence, that Dinsmore sold the wool to this Barker, as an individual, on his own responsibility, without reference to the fact of his being either a partner with the defendants, or their agent; and if that was the intention of the parties at the time, then the plaintiff will not be entitled to recover, and your verdict will be for the defendants.]"* *

The verdict was for the plaintiff for $3121.71.

The defendants took out a writ of error.

They assigned for error the answers to the points, and the parts of the charge included in brackets.

*A. M. Brown* and *T. M. Marshall*, for the plaintiffs in error.— The plaintiff intended to change the title by a sale to a person, supposing him to be a member of the firm, and thus enabled him to impose upon the firm, and he must bear the the loss : Parker *v.* Patrick, 5 T. R. 175; Mowry *v.* Walsh, 8 Conn. 243; Root *v.* French, 13 Wendell 572; Smith *v.* Smith, 9 Harris 367.

A bonâ fide purchaser of a chattel, for a valuable consideration, in the usual course of trade, and without notice, from a fraudulent vendee, takes a title clear of the fraud, whether it be actual or legal : Sinclair *v.* Healy, 4 Wright 417; Mackinley *v.* McGregor, 3 Wharton 369; Thompson *v.* Lee, 3 W. & S. 479; Harris *v.* Smith, 3 S. & R. 20; Robinson *v.* Dauchy, 3 Barbour 20; Buffington *v.* Gerrish, 15 Mass. 156; Morris on Replevin (2d ed.) 88, 191.

*M. W. Acheson* (with whom was *W. B. Rodgers*), for the defendant in error.—No man can be divested of his property without his own consent; and, even the honest purchaser under a defective title cannot hold against the true proprietor : Saltus *v.* Everett, 20 Wendell 267; Wilkinson *v.* King, 2 Camp. 335; Loeschman *v.* Mackin, 2 Stark. R. 512; McMahon *v.* Sloan, 2 Jones 229; Kingsford *v.* Merry, 1 Hurlstone & Norman 503; Decan *v.* Shipper, 11 Casey 239.

The opinion of the court was delivered, May 17th 1872, by

WILLIAMS, J.—The verdict of the jury establishes the fact that the plaintiff below did not sell the wool to the defendants' vendor, as an individual, on his own responsibility, but as a member or agent of the defendants' firm, and upon their credit.   Nor was the wool delivered to him by the plaintiff.   It was delivered to the railroad company, to be carried to Pittsburg, and there delivered to

22 P. F. SMITH—28

[Barker *v.* Dinsmore.]

defendants, to whom it was consigned by the plaintiff. Under the contract of shipment the company had no right to deliver the wool to any person except the consignees; and their delivery of it to the defendants' vendor vested in him no property or right of possession as against the plaintiff. The principle which underlies this case, and by which the rights of the parties are to be determined, is this: The sale of goods by one who has tortiously obtained their possession without the owner's consent, vests in the purchaser no title to them as against the owner. As a general rule no man can be divested of his property without his own consent and voluntary act. It is true that there are exceptions to the rule, as clearly defined and as well settled as the rule itself, but this case does not come within any of them. Here the defendants' vendor, as we have seen, acquired no right or title to the wool under his contract with the plaintiff, and he did not obtain from him its actual possession. The railroad company had no authority, as the plaintiff's agent, to deliver the wool to him, and their delivery gave him no right or title to it whatever. Nor had he any apparent or implied authority from the plaintiff to sell or dispose of it. It is clear, then, that he could convey no title by its sale; and if so, the defendants could acquire no title by its purchase, though they purchased it for a fair and valuable consideration, in the usual course of trade, without notice of the plaintiff's ownership, or of any suspicious circumstances calculated to awaken inquiry or put them on their guard. The case is a hard one in any aspect of it. One of two innocent parties must suffer by the fraud and knavery of a swindler, who had no authority to act for either. But the law is well settled that the owner cannot be divested of his property without his own consent, unless he has placed it in the possession or custody of another and given him an apparent or implied right to dispose of it. The case was tried on this principle, and as there is no error apparent in the record, the judgment must be affirmed.

Judgment affirmed.