# Baldwin, Appellant, *v.* Pennsylvania Fire Insurance Company.

*Insurance—Fire insurance—Contract.*

A policy of insurance is a contract, and until the negotiations of the parties have brought them to such a stage where it may fairly be said that they have agreed upon something, no contract exists.

Where after the dissolution of a partnership and the death of one of the partners, the surviving partner cancels a fire policy which had been issued to the firm, and directs the insurance agent to issue a new policy in the name of the deceased partner, dating it prior to his death, and covering real estate which had become the property of the deceased, and further

directs the agent to send the policy to the agent and attorney for the heirs of the deceased, and the latter refuses to accept the policy as made out, and states that he will call upon the agent in reference to the matter, but never does so, the heirs of the deceased cannot recover from the insurance company for the loss of the premises, inasmuch as no contract existed between them and the insurance company.

Argued Jan. 14, 1902. Appeal, No. 51, Jan. T., 1902, by plaintiff, from order of C. P. Luzerne Co., June T., 1898, No. 211, refusing to take off nonsuit in case of C. L. Baldwin, Administrator, v. Pennsylvania Fire Insurance Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before FERRIS, J.

At the trial it appeared that J. J. Bulford died November 4, 1897, seized and possessed of a lot of land in Dallas, Luzerne county, Pa., whereon was erected a frame building. Four days after his death Henry Hatfield, a former partner of Mr. Bulford called at the office of Derr & Brother, agents, representing the Pennsylvania Fire Insurance Company, and asked that a policy of insurance be made by that company upon the building above referred to, and that it be sent to C. D. Foster, Esq. A policy was prepared in the name of the deceased, J. J. Bulford, and antedated November 1, 1897, and sent to Mr. Foster as requested by Hatfield.

Foster, acting on behalf of the then owners of the property (the heirs of the late J. J. Bulford) returned the policy to the insurance agents with objections to its being made out in the name of a dead man, and suggested that it be made to "the estate." It was then sent a second time, unchanged, to Mr. Foster, who again returned it. Mr. Little, the messenger, says, "I again took it around to Derr & Brother's in pursuance to Mr. Foster's orders, and I explained to them that Mr. Foster still thought it ought to be made to the estate, and they called my attention again to the fact that it was dated prior to his death. And I told them that I told Mr. Foster that, but he thought it ought to be made out to the estate, and they said 'Well, what shall we do with it?' I says, 'Mr. Foster says keep it here a day or two, he is coming in to see you.' . . . . They either asked me if I wanted it canceled, they either put it that way,

says ' Do you want this policy canceled,' or else he says ' What shall we do with it?' And I remember that I gave them positive instructions not to cancel it, . . . . and I told them they should keep it there for a few days until Mr. Foster would come." On cross-examination Mr. Little says: " Q. You took it back a second time and told them Mr. Foster did not want it that way, made out to J. J. Bulford, he being dead at the time it was issued? You told him all that, didn't you? A. Yes, sir; I told them that Mr. Foster thought it ought to be made out to the estate."

Mr. Foster did not call in " a day or two " nor until after the property had been destroyed by fire on February 19, 1898, and nothing was done by Mr. Foster by way of acceptance of the policy offered by the company, and nothing was done by the company by way of accepting the counter proposition of Mr. Foster that the policy " be made out to the estate."

Plaintiff's counsel made the following offer:

1. We propose to show that the contract of insurance originally made between the defendant company and H. M. Hatfield & Company while they were the joint owners of the property insured was afterwards altered or changed, to wit: on November 8, 1897, so as to separate the ownership of the one from the other and apportion the insurance to their changed ownership, consisting of personal property in the one and real estate in the other, without any new consideration passing between the assured and the company on said date, or subsequently. That the company assumed and undertook to insure the building erected on the real estate for the benefit of J. J. Bulford with full knowledge of his death at that time fixing the new policy as of a time prior to his death, and to insure the personal property for the other party to said firm, to wit: H. M. Hatfield. That pursuant to this new arrangement which they entered into with full knowledge of the facts after the loss and total destruction of the building and its contents by fire, to wit: on February 24, 1898, they did pay to the said Hatfield the loss sustained by him on his personal property by the fire and neglected and refused to comply with the other portion of said contract, namely, to pay for the destruction of the building which was under the new contract specified as the property of J. J. Bulford; in other words, that at said time they affirmed

the validity of the new arrangement and new contract entered into on November 8, 1897, as far as the same related to one of the original parties insured and repudiated their liability at that time for the first time as to the destruction of the building which was designated as belonging to Mr. Bulford.

And the objection to the same being as follows:

Objected to, for the reason that the entire offer already appears in evidence under objection by the defendant with the exception of the proposition to prove payment on February 24, 1898, through H. M. Hatfield, to which we object as immaterial, irrelevant and incompetent to affect this defendant.

The objection is sustained, exception noted for the plaintiff and bill sealed. [1]

We will renew the last offer as stated (first assignment of error) namely, what we propose to prove by Mr. Hatfield and in addition thereto we offer the company's own receipt together with the indorsement thereon which reads, " Canceled November 1, 1897, return premium $25.00, and rewritten for unexpired term;' this being the paper which Mr. Hatfield says he signed on November 8, 1897, at their office.

And the objection to the same being as follows:

We still object to it for the reason that the evidence shows that what was written was the policy in suit upon which the plaintiff has declared, and furthermore that the insurance with H. M. Hatfield & Company was rewritten and that the force of this indorsement on the receipt would be a contract with H. M. Hatfield & Company, upon which the plaintiff cannot recover.

Plaintiff's counsel: And in addition to this so we will not have to make too many offers, in addition to the lost policy receipt and what we propose to prove by Mr. Hatfield, namely the payment to him of the loss which he sustained under the new arrangement, the policy itself, which the court has already excluded when offered by itself without this additional evidence, the Bulford policy, the policy in this suit as part and parcel of that arrangement, that being the policy that was given pursuant to the rewriting. This to be followed by due proof of loss.

Defendant's counsel: We renew all the objections.

242     BALDWIN, Appellant, *v.* FIRE INS. CO.

Statement of Facts—Opinion of the Court. [20 Pa. Superior Ct.

The objections are sustained, exception noted for plaintiff, and bill sealed. [2]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*John McGahren*, for appellant.

*Henry A. Fuller*, for appellee.

OPINION BY W. D. PORTER, J., April 21, 1902:

The defendant company had, in May, 1897, issued a policy to the firm of H. M. Hatfield & Company, covering the real and personal property of the firm for a period of three years. The partnership trading under the style of H. M. Hatfield & Company was composed of H. M. Hatfield and John J. Bulford. The firm was dissolved in October, 1897. Hatfield took the personal property and contracts of the firm and conveyed the real estate to John J. Bulford. Hatfield went to the agents of the insurance company on November 8, 1897, and notified them of the dissolution of the firm and that Bulford had died on the fourth day of the same month. He canceled the policy which had been issued to the firm and directed the agents to insure the personal property in his own name and to issue a new policy in the name of J. J. Bulford, covering the store building which had become the property of the latter. He told the agent of the insurance company that the policy on the building should be dated back to November 1, so as to bear date prior to the death of Bulford, and when the policy was so made out to send it to C. D. Foster, Esq., who was the agent and attorney for the heirs of the decedent. He directed the cancelation value of the old policy to be credited on the new premiums. The evidence produced by the plaintiff established the agency of Foster and his authority to act for those who had become the owners of the building upon the death of Bulford. A new policy was made out, dated November 1, 1897, insuring the property in the sum of $1,000 and in the name of J. J. Bulford; this policy was sent to Mr. Foster who declined to accept it and returned it to the company. The agent of the com-

pany, without making any changes in the policy, sent it a second time to Mr. Foster, who again declined to receive it and returned it by a messenger, who by direction stated his objections to its form and that Mr. Foster would himself call in a day or two. Mr. Foster never did call to close the contract until after the fire, which occurred two months subsequently.

When the partnership was dissolved, the interest of Bulford in the personal property ceased, and Hatfield did not have after October 15, 1897, any insurable or other interest in the real estate. When the original policy was canceled the contract of the insurance company which covered the personal property of Hatfield became entirely distinct from any contract of indemnity into which it was proposed that they should enter with the heirs of Bulford. Whether the insurance company had paid Hatfield for the loss upon the personal property was not material to the determination of the question of their liability to the heirs of Bulford for the destruction of the building. The plaintiff in his statement declared upon the alleged contract which was dated November 1, and which the only agent authorized to represent the owners of the building had declined to accept, and the statement contained no reference to the earlier policy which Hatfield had caused to be canceled. The testimony of Hatfield and Foster leaves no doubt that the part of the premium upon the first policy which was to be returned upon the cancelation thereof was the property of Hatfield, and the heirs of Bulford would have become liable to him for the premium upon their new policy when, and not until, they accepted the contract. The liability of the company to Hatfield was a matter totally distinct from the relation in which they stood to the heirs of Bulford, and the first and second assignments of error are without merit.

A policy of insurance is a contract, and until the negotiations of the parties have brought them to such a stage where it may fairly be said that they have agreed upon something no contract exists. The question presented in this case was not whether there must be some evidence of an acceptance of the policy by the assured, but whether the evidence did not clearly make out a case of a refusal to accept the policy as tendered. It is conceded that Mr. Foster was authorized to act for the owners of the building, when he declined to accept the policy

the last time that it was sent him by the company he returned it by E. K. Little, who testified that by direction of Foster he took the policy to the agent of the company and told him that "Mr. Foster did not want it that way, made out to J. J. Bulford, he being dead at the time it was issued." This was a refusal to join in the contract upon which the plaintiff now relies. The plaintiff failed to prove a contract and there was no error in the refusal of the learned court below to take off the judgment of nonsuit.

The judgment is affirmed.