206    248
f 33 SC ¹505

## Baldwin, Appellant, *v*. Pennsylvania Fire Insurance Company.

*Insurance — Fire insurance — Cancellation—Contract—Action—Parties.*

A partnership consisting of two persons owned a policy of fire insurance which covered a building insured for an amount stated and the merchandise therein also for an amount stated. While the policy was in existence the partnership was dissolved, one of the partners transferring his interest in the merchandise to the other, and the latter his interest in the real estate to his copartner. At the same time they agreed that the policy should be changed to accord with their several interests. Four days after the dissolution the partner to whom the real estate had been conveyed died, and immediately thereafter the surviving partner informed the agents of the insurance company of the fact, and of what had been arranged. It was agreed between the surviving partner and the insurance company's agent that the company should issue two new policies, one to the surviving partner on the merchandise, and one to the deceased partner on the building, and that the two should be dated as of the day of the dissolution of the partnership. The company agreed to send the policy for the real estate to the attorney of the deceased partner. When the attorney received it he noticed that it was made out in the name of the deceased as the insured. Thinking that it was a mistake to have the policy issued in the name of the dead man, he sent it back to the agents with a request that it should be made out to the estate of the deceased. The agents persisted in their opinion that it was correctly made out and returned it. The attorney sent it back by a messenger, with instructions to explain the circumstances fully to the agents. The agents, however, adhered to their first opinion and asked the messenger whether the attorney wanted the policy canceled. He answered that the attorney did not want it canceled, and that the attorney would call and see them about it in a few days. He did call but failed to see the agents. Within a year afterwards a fire occurred which destroyed both building and merchandise. The company denied liability for loss on the building alleging that the policy had been canceled before the fire. In a suit upon the policy it

appeared that the company had not canceled the insurance in the manner prescribed by the policy by five days' notice, and the return of the unearned premium. *Held,* that the contract as to the new policy on the building was complete when the surviving partner acting as agent for his copartner and the insurance agent both agreed to it, and that the insurance company was liable for the loss of the building.

In such a case, it appearing that the insurance was for the insured or his legal representative, the suit can be sustained in the name of the administrator of the deceased partner, subject to the jurisdiction of the orphans' court to distribute the fund raised by it.

Argued April 13, 1903. Appeal, No. 240, Jan. T., 1902, by plaintiff, from judgment of Superior Ct., Jan. T., 1902, No. 51, affirming judgment of C. P. Luzerne Co., June T., 1898, No. 211, refusing to take off nonsuit in case of C. L. Baldwin, Administrator, v. Pennsylvania Fire Insurance Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Appeal from Superior Court.

The facts appear by the opinion of the Supreme Court and by the report in 20 Pa. Superior Ct. 238.

*Error assigned* was the judgment of the Superior Court.

*John McGahren,* for appellant.

*Henry A. Fuller,* for appellee.

OPINION BY MR. JUSTICE DEAN, May 18, 1903:

In 1897 John L. Bulford and H. M. Hatfield conducted a mercantile business in Dallas, Luzerne county in name of H. M. Hatfield & Company. They were joint owners of the building in which the business was conducted. On May 5, 1897, the defendant issued to them a policy of insurance against loss by fire for the term of three years, in which the building was insured for $1,000 and the merchandise therein for $2,000. On November 1, 1897, the partnership was dissolved on account of the failing health of Bulford who sold and transferred his interest in the merchandise to Hatfield and Hatfield sold and conveyed all his interest in the building to Bulford; at the same time they agreed that the insurance policy should be changed to accord with their several interests, the insurance on the

building to be assigned to Bulford and on the merchandise to Hatfield, the latter to arrange the formalities with the insurance company and have it consent to and ratify the transfer. Four days after the dissolution of the partnership Bulford died and four days after his death Hatfield called upon the agents of the insurance company and informed them fully of all that had occurred; he did not have the policy because thieves had entered the store soon after the dissolution of the partnership and had taken it; but the agents had an abstract or duplicate of it. The agents were willing to carry out the arrangement between Bulford and Hatfield as to the transfer and suggested that the policy should be treated as surrendered, and that the company issue two new policies, one to Hatfield on the merchandise and one to Bulford on the building and that the two should be dated as of the day of dissolution of the partnership and the day on which it was agreed their interests should be severed; Hatfield concurred in this suggestion and it was at the same time agreed that the policy for the Bulford interest should be mailed to Mr. Foster, Bulford's attorney. When Foster received it he noticed that it was made out to Bulford as the insured; he thought this was a mistake, for although Bulford was living at the date of it, he had died before it was delivered; he therefore sent it back to the agents to have it made out to the estate of Bulford; the insurance agents persisted in their opinion, that the policy being dated in the lifetime of Bulford, it was properly made out, and remailed it to Foster who on receiving it persisted in his opinion that it should be made out to the estate of Bulford and again sent it by messenger to the agents, with instructions to explain fully to them, that when the policy was written Bulford was dead, although alive when dated. The agents adhered to their first opinion and asked the messenger whether Foster wanted the policy canceled. He answered that Foster did not want it canceled and that Foster would call and see them about it in a few days; he did call but failed to see the agents.

Matters remained in this condition, when less than a year afterwards a fire occurred which destroyed both building and merchandise. Foster as attorney for the Bulford estate notified the company of the loss and made claim for indemnity on the building; the company denied liability on the ground, that

the policy had been canceled before the fire; thereupon the administrator of Bulford brought this suit. At the trial the facts were developed as we have stated them; the court of common pleas, being of opinion that there was no contract between the parties, because their minds had never assented to the same thing, nonsuited the plaintiff who appealed to the Superior Court. That court affirmed the judgment holding that: "A policy of insurance is a contract, and until the negotiations of the parties have brought them to such a stage, where it may fairly be said they have agreed upon something, no contract exists." And it held that under the evidence, both parties had not agreed and there was no contract of indemnity to Bulford on the building. On allowance of this court, an appeal from the judgment of the Superior Court comes before us. In substance the error assigned is the decision of the court that no contract existed.

We think the decisions of the common pleas and the Superior Court, as to what in this case on the evidence, constituted the contract, were wrong. The policy on the partnership property was issued to the partnership on May 5, 1897, for a three years' term, in sum of \$3,000 and the full amount of the premium for the term paid; six months afterwards, on November 1, the partnership was dissolved; under the terms of the contract the partners could surrender the policy and claim the unearned premium, which, counting the whole term as thirty-six months, would be just five sixths of what they had paid; or they could with the company's consent accept individual policies for the remainder of the term for their respective interests and continue the insurance; or the company could return the unearned premium if it so chose and cancel the policy. This is the clause in the policy on the subject of cancelation:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancelation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium."

At the time of the dissolution it was agreed between the partners, that the policy should be continued in force, but that with consent of the company, their respective interests, Bulford's on the building and Hatfield's on the merchandise should be indorsèd upon it; at the same time Bulford appointed Hatfield his agent to see the company's agent and attend to the matter. Four days afterwards, before Hatfield had time to attend to it Bulford died, but Hatfield two or three days afterwards called upon the agent and fully informed him of the agreement between him and Bulford and of Bulford's death; both insured and insurers desired a continuance of the indemnity for the remainder of the term; but the agent suggested that the best form to carry out the arrangement was to issue two policies, one to Hatfield for $2,000 on the merchandise and one to Bulford for $1,000 on the building, and date both the day of dissolution of the partnership; this was assented to by Hatfield and he left with the understanding that the policies were to be mailed; afterwards the agent mailed Bulford's policy made out in his name to his attorney Foster; he never delivered Hatfield's, but the company paid his loss just as if the policy had been delivered. Now this contract for the extension of the indemnity was complete when Hatfield left the agent's office. Hatfield, the agent of Bulford appointed by Bulford before his death to attend to this very matter, had performed fully his duty; the agent did not want the policy canceled or surrendered; he wanted to continue the risk; did not want to pay back five sixths of the premium already in the company's hands; he goes further, and in accordance with his own suggestion mails the policy for Bulford's interest in Bulford's name to his attorney Foster. But the policy mailed to Foster was not the contract; it was only the written evidence of the contract made between Hatfield and the agent of Bulford to extend the indemnity for the balance of the term. We suppose a fully authorized agent of the Bulford estate could afterwards have formally canceled the contract made by Hatfield, but nothing less than clear and positive evidence of an intention to do so would have had that effect. The company gave no notice of its intention to cancel as required by the contract nor did it return nor offer to return five sixths of the premium, a preliminary to cancelation as the contract required. We can take no

other view of the evidence, than that the contract of indemnity was complete when Hatfield and the agent both agreed to it and the agent by consent of Hatfield retained for the company the unearned premium.

Was the contract afterwards rescinded or canceled by the company or by consent of Foster, the attorney ?   The company could cancel it just one way at any time, that was, by five days' notice to the representative of the estate of its intention to do so and return of five sixths of the premium ; it gave no notice and offered to return no premium.   As to Foster, the attorney, we doubt whether his duties as attorney embraced that of canceling a policy of insurance upon a building of his deceased client ; but even if he had such authority the evidence wholly failed to show an intention on his part to cancel.   He wanted some change made in the name of the insured, but the messenger distinctly told the insurance agent that Mr. Foster did not want the policy canceled, but would call and see him about it and it so remained until after the fire.   From the evidence, Foster wanted it his way and the insurance agent wanted it his, the way he and Hatfield had first agreed upon.   It would be a travesty upon justice to permit the bickerings of these two agents about an immaterial matter to fritter away and destroy a part of a dead man's estate.

The suit can be sustained in the name of the administrator. It may be, on a distribution, the orphans' court will hold that the proceeds of the policy shall go to the heirs to the real estate, but the policy itself stipulates that wherever the word " insured " occurs it shall be held to include the legal representative of the insured.   Although the money represents a loss on real estate, it is now turned into money and may be sued for by the administrator.   When in his hands the orphans' court can properly make distribution.

The judgment of the Superior Court is reversed ; the judgment of the common pleas is reversed and a procedendo is awarded.   On a retrial it is directed that the law be announced as we have indicated and the evidence in so far as it appertains to the issue be submitted to a jury.