Ludwinska *v.* John Hancock Mutual Life
Insurance Company, Appellant.

Argued January 30, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Ira Jewell Williams, Jr.,* of *Brown & Williams,* for appellant.

*Thomas S. Lanard,* for appellee.

OPINION BY MR. JUSTICE KEPHART, March 25, 1935:

Bertha Ludwinska applied for an industrial life insurance policy representing herself in the application as being thirteen years of age. She named her mother as beneficiary, and signed the application "Victoria Ludwinska," taking the physical examination for Victoria. The policy was delivered to her. Victoria was her sister confined in an asylum as an imbecile, and had been so for four and a half years. Victoria died more than two years after the policy had been issued and delivered to Bertha. Suit was thereafter instituted on it by the beneficiary as being a contract between Victoria and the insurance company. An affidavit of defense was filed denying the existence of any contract and specifically charging fraudulent substitution and impersonation, and that no policy had been in force for the period of two years. Appellee bases recovery chiefly on the policy's incontestable provisions, which read:

"After this policy shall have been in force during the lifetime of the insured for a period of two years from date of its issue, it shall be incontestable, except for nonpayment of premiums, or for failure to have the policy endorsed in case of previously issued insurance as herein provided, for insurance in excess of the amount permitted by the provisions hereof, or for error in age."

The court below refused plaintiff's motion for judgment, and on appeal to the Superior Court that order was reversed and judgment was directed to be entered for the full amount named in the insurance policy. This case is here on allowance from the Superior Court.

In reversing the lower court, the Superior Court accepted as correct defendant's averments that fraud material to the risk was committed in giving false answers as to the state of health, medical treatment and other matters and held:

". . . it was defendant's duty, however, to investigate within the two-year period to ascertain if deceit had been practiced. If defendant had moved to protect itself from such imposition within that period, and the facts now alleged had been discovered, the contract would have been declared invalid. The very purpose of an incontestable clause is to give assurance to the insured that after the lapse of the two-year period the validity of the policy will not be attacked, except for the express reasons therein mentioned. If the defendant had desired to safeguard itself further, it should have so stipulated," citing Feierman v. Eureka Life Ins. Co., 279 Pa. 507; Central Trust Co. v. Fid. M. L. I. Co., 45 Pa. Superior Ct. 313, 317.

The difficulty we find with this conclusion is that the court did not go back far enough to ascertain whether there was any contract between Victoria and the insurance company that would permit the operation of the incontestable clause. That any such contract existed was denied at the argument and in the affidavit of defense.

In all insurance policies, as in other contracts, there must be some point where the minds of the parties meet in contractual relation (Baldwin v. Fire Ins. Co., 20 Pa. Superior Ct. 238, 243, reversed on other grounds in 206 Pa. 248; Mutual Life Ins. Co. v. Young, 90 U. S. 85, 23 L. Ed. 152; Drake v. Missouri Life Ins. Co., 21 Fed. 2d 39, 41) on all its elements before any contract whatever exists: Vitro Mfg. Co. v. Standard Chemical Co., 291

Pa. 85; Edgcomb v. Clough, 275 Pa. 90, 103, 104. There must be identified parties to the contract or, at least, identified parties to take place in the negotiations leading to the contract. When the parties have been identified and their minds have at least met on the question of whom they are respectively dealing with, then whatever fraud, misrepresentation, substitution or impersonation may occur in the negotiations leading to the formation of the contract itself, are matters of defense. The contract may be induced by fraud or by active misrepresentation of material facts by one of the parties, but before such fraud or misrepresentation comes into play, there must be a relationship, at least in a tentative form, between two or more identified parties who are negotiating the terms of the contract.

To secure a policy of insurance there must be some offer or application by one capable of making it. The contract must be made by someone capable of contracting under the insurance law. Without this neither the incontestable clause contained in the policy nor the policy itself has any life. The clause can rise no higher than the policy; the incontestable clause cannot of itself create the contract.

Here from the pleadings it is conceded that Victoria did not and could not sign the application for insurance. She did not and could not authorize her sister to sign it for her. When the application purporting to come from Victoria was received and accepted by the insurance company, thus giving rise to what might have been a contractual conception, it was then as to Victoria and the company as though it had never been written or delivered. Victoria was an imbecile without power to do any acts at all. Therefore, a contractual relation between Victoria and the company never existed. What followed thereafter could not supply this fatal defect unless the insurance company, with knowledge of the situation, had adopted the acts of Bertha for Victoria. See Maslin v. Columbia Life Ins. Co., 3 Fed. Supp. 368; People v.

Alexander, 183 App. Div. 868, affirmed in 225 N. Y. 717; Logan v. Texas Mutual Life Ins. Co., 51 S. W. (2d) 288, which are helpful. In these cases it was held that if the insured never made any application for insurance and the policy was procured by impersonation, no contract existed between the parties which would make the incontestable clause applicable. See also Nat. Life & Accident Ins. Co. v. Moore, 216 Ala. 554; West v. Life and Casualty Ins. Co. of Texas, 140 So. 104 (La. 1932).

Where one contracts with an individual face to face and intends to contract with the person before him, the contract, if any, is made with that particular person, regardless of what name he may assume for the transaction and regardless of whether the assumed name actually is the name of a living person with whom the other party was under the impression he was contracting. It is, of course, well settled that "a man, either in his general dealings or in a particular transaction, may adopt whatever name he chooses and he will be bound accordingly. . . . All that the law looks to find is the identity of the individual and when that is ascertained and clearly established, the act will be binding on him and others": Coltun v. Getz, 97 Pa. Superior Ct. 591, 594.

From the affidavit of defense now before us, there never was a contract concerning the life of Victoria; therefore, all the statements from a person impersonating her were, as to her, wasted. What the insurance company really did was to insure Bertha, if it insured anyone.* The

* In Land Title & Trust Co. v. Northwestern Nat. Bank, 196 Pa. 230, 211 Pa. 211, where a bank gave its check payable to the order of a named person (who was an actual person and for whom the check was intended) and delivered the check to a third party under the mistaken belief or under the fraudulent representation that the third party was actually the named payee, the bank drawing the check could not recover from another bank which cashed the check, since the money was, in fact, paid to the actual person to whom the drawer intended it to be paid; in other words, the drawer, in delivering the check to the impersonator, intended the money to be paid to that particular person, regardless of what name he might use, and con-

name affixed to the application does not govern unless the name identifies the human being it purports to. "There is no such sanctity in a name that right and justice should be sacrificed to it." Insurance companies do not insure names. They insure lives. The name Victoria was not insured. What is insured is the life of a person when the insurance is applied for in person, or by someone with authority so to do. If one gets married under a false name, he, the individual, is married no matter what his real name may be: Chipman v. Johnston, 237 Mass. 502. If one using a false name dies, he, the human being that was in life, is dead.

But there would be nothing to prevent the adoption and ratification of the acts of the parties when they are advised as to the true state of matters. As stated, once the legitimate contractual channel has been entered by an

---

sequently could not complain if this result followed. See also Market St. Title & Trust Co. v. Chelten Trust Co., 296 Pa. 230, 235.

A different result follows where a person represents that he is the agent of another, instead of representing that he actually is the other person, and by such representation obtains something of value from the other contracting party. There is no contract between the parties: Decan v. Shipper, 35 Pa. 239; Barker v. Dinsmore, 72 Pa. 427. This principle is illustrated in Edmonds v. Merchants Dispatch Transportation Co., 135 Mass. 283. The court said: "He (the plaintiff) could not have supposed that he was selling to any other person; his intention was to sell to the person present and identified by sight and hearing; it does not defeat the sale because the buyer assumed a false name or practiced any other deceit to induce the vendor to sell." See Phillips v. Brooks, [1919] 2 K. B. 243; Gotthelf v. Shapiro, 136 App. Div. 1.

In contracts which do not involve a sale of goods or transfer of title to personal property, it has been held in some instances that a contract obtained by impersonation is no contract at all as between the parties: Morgan Munitions Co. v. Studebaker Corp., 226 N. Y. 94; Brighton Packing Co. v. Butchers Slaughtering & Melting Assn., 211 Mass. 398. In like tenor are Green v. North Buffalo Twp., 56 Pa. 110; Schuylkill Co. v. Copley, 67 Pa. 386; Stauffer & Stauffer v. Gebhardt, 103 Pa. Superior Ct. 300.

application duly signed by the person whose name identifies the person insured, and a policy issues on that application, what is contained in the application or what is done thereafter are matters of defense; and if they are of sufficient gravity they may cause the policy to be a voidable contract, or entirely void.

Had Victoria, of sound mind, signed or authorized Bertha to sign the application, and a policy had subsequently issued to her, then the substitution of Bertha for Victoria in the medical examination would have been an affirmative defense to be proven by the company (Suravitz v. Prudential Ins. Co., 261 Pa. 390) just as false representations as to prior sickness or health and the many other assertions deemed representations that may be found to be false in the application would be affirmative defenses.

When the beneficiary as plaintiff at the trial submits the insurance contract as the basis for her right to recover, she is met at the threshold of her action by a challenge that Victoria was not the person insured. Where, in an action on an insurance policy, there is a contest over the fact of who was the person insured, the burden is always on the beneficiary to show that the person whose death is shown to have taken place was the person insured: Suravitz v. Prudential Ins. Co., supra.

Appellee contends that the carrier regarded the insurance as being in force for a period of two years by demanding and receiving the premiums. True, this was done, but it is argued that it was on the basis that Bertha was the person insured, not Victoria. If, as stated above, the insurance company knew or should have known that Victoria and not Bertha was the person Bertha intended to insure, and the company adopted her act as the act of Victoria continuing thereafter for a number of years to receive the premiums, it would now be too late to disavow its liability, and the contract would have been in force, and with it, the incontestable clause.

The averments of the affidavit of defense cannot aid the appellee as an admission of liability. It was proper to frame the answer to meet plaintiff's allegations without acknowledging the existence of the contract or surrendering the main ground of defense that there was no contract in existence. The affidavit met the complainant's statement, in case it was shown there was a contract originally; the carrier had a perfect right to lay hold of any other legal defense. The record is in no condition, however, for a summary judgment. All the alleged facts, some of which will be disputed, must be placed on record before a proper judgment may be entered by the court if the record justifies it.

The judgment of the Superior Court is reversed, and it is directed that the case be remanded to the court below with a procedendo.