## Kleiner Estate.

Argued November 16, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Morris H. Goldman*, with him *David J. Kaufman*, and *Wolf, Block, Schorr and Solis-Cohen*, for appellant.

*Nochem S. Winnet*, with him *Donald Brown*, and *Fox, Rothschild, O'Brien & Frankel*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 2, 1962:

In January, 1958, Dr. Blanche F. Kleiner, purchased a $10,000 United States Savings Bond payable on its face to herself, and payable on death to Louis Wolfson. Dr. Kleiner died on September 17, 1958, leaving a will which made no reference to this bond which was found in her safety deposit box. Brian David Wolfson, her step-grandson, a minor 14 years of age, claimed at the audit of the account of the estate of the decedent, that he was entitled to this $10,000 bond. The Orphans' Court of Philadelphia County decided against his claim. Through the guardian of his estate, the Broad Street Trust Company, Brian appealed. Who is entitled to the bond or its proceeds? That is the question in this case.

Although the purchaser of the bond is named throughout these proceedings as Dr. Blanche F. Kleiner, we will, for the purposes of clarity, call her

by her official name, Mrs. Blanche Kleiner Wolfson, she having been the wife of Dr. Louis Wolfson, who was the grandfather of the claimant.

Brian Wolfson is not an heir at law of Mrs. Wolfson and, therefore, can only qualify to participate in the estate of Mrs. Wolfson through the latter's will or by specific intention manifested during her lifetime. He contends that there was such an intention, namely, that although the bond designates Louis Wolfson as the beneficiary, Mrs. Wolfson really purposed to name Brian Wolfson as that beneficiary.

In support of this contention the appellant points out that Louis Wolfson had predeceased his wife by nine years so that she could not have had any desire to select him as the beneficiary. The heirs of the decedent Mrs. Wolfson, the appellees herein, assert, to the contrary, that Mrs. Wolfson had in mind routing the proceeds of the bond to her residuary estate since Mrs. Wolfson planned to provide for the education of the other children in her family. She said in her will: "The balance of my estate shall be . . . for the purpose of setting up an educational fund to be used in assisting children in my family (used in its broadest sense), and their children, in obtaining a higher education. . . . The principal of this Trust shall be invested only in bonds of the United States Government."

The appellees reinforce this position by emphasizing the very significant fact that Mrs. Wolfson made specific provision in her will for her step-grandson, namely: "I have set aside the sum of Twenty Thousand Dollars, in government bonds, for Brian Wolfson. The proceeds shall be used for his college education and for post-graduate education."

In the court below the appellant argued that he was entitled to the bond on the basis of a gift inter vivos, but in this Court he asserts that the $10,000 bond is his on the basis that "he is the beneficiary intended by

the decedent." That contention is mainly predicated on the following episode described by Emanuel S. Wolfson, father of Brian.

Emanuel said that some time in January or February, 1958, Mrs. Wolfson, the decedent, came to Emanuel's home and handed to Brian the $10,000 bond in controversy, stating: "This is yours." Emanuel looked at the bond and discovered that it was marked payable on death to Louis Wolfson, his father, that is, Brian's grandfather. He called this to the attention of Mrs. Wolfson who then said: "They made a mistake. I will change it. I will have them change it." She took back the bond but never effectuated the indicated change.

The appellant argues that the bond nevertheless belongs to Brian. It is to be noted, however, in this connection that one who asserts that the owner of any particular property is the unnamed Z and not the officially named A, has the burden of displacing A. (*Ludwinska v. John Hancock Mutual Life Ins. Co.*, 317 Pa. 577).

The appellant attempts this displacement by asserting that Brian Wolfson was "admittedly" Mrs. Wolfson's "favorite." But "admittedly" is undoubtedly too strong a word in this connection because Mrs. Wolfson never stated or "admitted" that Brian was her "favorite." An admission is made by a person against whose interest the admission operates or someone speaking in his or her behalf. Those who spoke of the affectionate relationship existing between Mrs. Wolfson and Brian were not authorized to speak for her.

So far as Brian's parents are concerned, it is only natural for them to assume that Mrs. Wolfson had a particular fondness for their boy. Parents like to read into the words of a prospective benefactor a predilection which may enure to the benefit of their children. They do this not because of avarice but because it is human nature. Of course, it cannot be questioned that

Mrs. Wolfson had a deep affection and love for Brian, but the question here is whether her sentiment for him was so expansive that it overshadowed her sense of obligation to and affection for the other children. The record does not show that it reached that towering stature.

When the attorney for Brian asked Mrs. Blanche Alexander, one of Mrs. Wolfson's nieces, whether Mrs. Wolfson loved Brian, she replied: "There is no doubt. She loved children. Let's put it that way. *She loved children.*" (Emphasis supplied.)

Mrs. Alexander said further: "She [Mrs. Wolfson] always said that she loved the child, that the child gave her a great deal of comfort. But *she also loved my grandchildren.*" (Emphasis supplied.)

The appellant's argument that Mrs. Wolfson intended to give Brian the $10,000 bond is based on a series of faulty presumptions: (1) Mrs. Wolfson loved Brian more than any of the other children. (2) She applied for the bond in the name of Brian. (3) The bond clerk erred in making out the application. (4) He erred in issuing the bond. (5) Mrs. Wolfson fully resolved to change the name of the beneficiary.

With these blocks of presumptions, the appellant builds a pyramid whose capstone is the conclusion that Brian *is* the owner of the bond. A probative examination, however, of these blocks show them to be wholly infirm in substantive value and not held together by the slightest mortar of logic or reasonable inference. If Mrs. Wolfson intended to change the name of the beneficiary why didn't she do so?

Eight or nine months elapsed between the date of the alleged intention to change and the date of her death. Mrs. Wolfson did not make out her will until seven months after the date of the alleged proffer of the bond. Why, if she wished to transfer this bond to Brian, did she not make reference to the bond in her

will? It will be recalled that in her will she specifically declared that she was giving Brian $20,000 in bonds to be used for his education. These bonds actually carried Brian's name as a registered co-owner, whereas the $10,000 bond in controversy did not. The more one examines the evidentiary pyramid erected by the appellant, the more apparent it becomes that the slightest pressure of rationalization applied against it sends it collapsing to the ground in disconnected pieces and unrelated fragments. Its only cohesiveness is the desire of Brian's parents to get for him the greatest amount possible from the estate of the step-grandmother. It is an understandable desire but it conflicts with the obvious intention of Mrs. Wolfson to provide for the other children as well.

During the last two and a half years of Mrs. Wolfson's life she purchased savings bonds in her name alone without any other named co-owner and without any payable-on-death beneficiary, all of which manifested a clear intent on her part to have the $10,000 bond become part of the residuary trust she was to set up in her will for the education of the children in her entire family. She was aware of the procedure required to change the name of a beneficiary, but she did not avail herself of that procedure.

The auditing judge found that the evidence presented in behalf of the claimant did not meet the measure of proof required to establish that there was a gift of the $10,000 bond to Brian. This finding was sustained by the Court en banc.

We are satisfied that the court below did not abuse its discretion in reaching the indicated conclusion.

Decree affirmed, each party to bear own costs.