ABNER G. TISDELL, Respondent, *v.* THE NEW HAMPSHIRE FIRE INSURANCE COMPANY, Appellant.

1. FIRE INSURANCE — CANCELLATION OF POLICY.    The provision of the New York standard policy of fire insurance, relating to the cancellation of a policy at the instance of the company, requires that, in addition to giving the five days' notice, the company must return or tender the unearned premiums in order to effect a cancellation.

2. RETURN OR TENDER OF UNEARNED PREMIUM.    The statement, in a five days' notice by the company to the insured of the cancellation of a New York standard fire policy, that the unearned premium will be returned by its local agent, does not constitute a return or tender of the unearned premium, and will not effect a cancellation; but, in order to make its notice effective, the company is bound to seek out the insured and tender him the whole amount due.

*Tisdell* v. *New Hampshire F. Ins. Co.*, 11 Misc. Rep. 20, affirmed.

(Argued January 27, 1898; decided March 1, 1898.)

APPEAL from an order of the General Term of the late Superior Court of the city of New York, entered January 12, 1895, and from the judgment entered thereon, reversing a judgment in favor of defendant, entered upon a verdict and granting a new trial.

This action was brought by plaintiff, as the surviving partner of the firm of Tisdell & Whittlesey, upon a New York standard fire insurance policy issued by the defendant to the plaintiff's firm.

The facts, so far as material, are stated in the opinions.

*Michael H. Cardozo* and *Edgar J. Nathan* for appellant. By the terms of the standard policy of insurance all the underwriter is required to do is to give five days' notice of cancellation of the policy, and then, by force of the express language contained in the contract of insurance, it absolutely ceases to exist. If the assured wishes the unearned premium he must surrender the policy, and thereupon the law gives him an ample remedy to obtain the return of the unearned premium, if it is not returned upon demand; but he cannot maintain an action for the unearned premium without surrendering his policy. If the underwriter desires the surrender of a policy that has already been canceled, the underwriter may repay the unearned premium and may then maintain an action to compel the surrender of the policy, if such surrender be refused. The only use of the policy to the assured is that he may have the evidence in his possession that the unearned premium has not been repaid, and the only use of the policy to the underwriter is its possession as evidence that the unearned premium has been paid. (*I. L. Ins. & Tr. Co.* v. *F. F. Ins. & Tr. Co.*, 66 N. Y. 119.) There can be no question as to the validity of the cancellation clause in the contract of insurance. (*C. P. I. Co.* v. *A. Ins. Co.*, 127 N. Y. 608; L. 1892, ch. 690, § 121.) The case of *Nitsch* v. *American Central Ins. Co.* (152 N. Y. 635) is not a conclusive adjudication as to the proper construction of the cancellation clause. (*D. & H. C. Co.* v. *P. C. Co.*, 50 N. Y. 250; *Doe* v. *Considine*, 6 Wall. 458; *Morgan* v. *R. R. Co.*, 96 U. S. 716.) If the notice of cancellation contains an offer to return the unearned premium it is sufficient, and no personal tender of the unearned premium is necessary. (*Walthear* v. *P. F. Ins. Co.*, 2 App. Div. 328.)

*George E. Miner* and *Ernest E. Baldwin* for respondent. The cancellation clause of the standard policy requires that the company shall, as a condition precedent to the cancellation of the policy, serve a five days' notice, and actually pay or tender to the insured a *pro rata* amount of the unearned premium. (*Nitsch* v. *A. C. Ins. Co.*, 83 Hun, 614; 152 N. Y.

635.) The cancellation clause in the contract of insurance would be invalid unless it provided for a restoration of the premium. (*Marshall* v. *R. F. Ins. Co.*, 78 Hun, 86.) The cancellation clause requires the actual payment or tender of the unearned premium. (*Van Valkenburgh* v. *L. F. Ins. Co.*, 51 N. Y. 465.) In the interpretation of a contract of insurance that construction will be given which is most favorable to the insured. (*Rickerson* v. *H. F. Ins. Co.*, 149 N. Y. 313.)

BARTLETT, J.    The question presented on this appeal is no longer an open one in this court. It was decided in the case of *Nitsch* v. *American Central Insurance Company* (152 N. Y. 635), affirmed in this court without an opinion.

In that case, as in this one, the question presented was, whether the provision of the New York standard policy of fire insurance, relating to the cancellation of a policy at the instance of the company, requires that, in addition to giving the five days' notice, the company must return or tender the unearned premiums in order to effect a cancellation. The answer was in the affirmative.

The only question presented for consideration in this case, therefore, is whether the defendant returned or tendered the unearned premium.

The record contains an admission made by the defendant upon the trial, which is as follows: " It was thereupon admitted by the defendant herein that neither the premium, nor a *pro rata* amount of the premium of the policy herein, had been returned, paid or tendered to the plaintiff or his agents, or to the firm of Tisdell & Whittlesey, or their agents, by the defendant or its agents."

It being the law, as we have observed, that, in addition to the notice of cancellation, there must be a return or tender of the unearned premiums in order to effectuate a cancellation of a policy, this admission of the defendant seems to be broad enough not only to support the judgment under review, but to cut off all opportunity for controversy on the subject.

It is urged, however, that this admission must be read in

connection with an admission by the plaintiff that T. Y. Brown, defendant's agent, served upon the firm of Tisdell & Whittlesey a paper of which the following is a copy:

"NEW YORK, *August* 7, 1891.

"TISDELL & WHITTLESEY:

"You are hereby notified in accordance with conditions of its policy, that the New Hampshire Fire Insurance Company, of Manchester, N. H., desires to terminate its liability and cancel policy No. 548,107, *issued to you on the* 15*th day of November,* 1890, *by T. J. Temple, at* 155 *Broadway,* New York City, insuring stk. and mchy., 128 Fulton St.

"Therefore, in pursuance of conditions on which said policy was issued, the said company shall without *further notice cancel said policy at noon* on the 12*th day of August,* 1891, and the *pro rata unearned premium will be returned by T. Y. Brown,* agent, 26 Pine Street, New York, as provided by conditions of said policy.

"Yours truly,

"NEW HAMPSHIRE FIRE INSURANCE CO.,

"T. Y. BROWN, *Agent.*"

If it be conceded that the contents of this notice should govern rather than the specific admission of defendant, whenever they come in conflict, the defendant's contention would not be aided, for the notice is not in disagreement with the admission.

It need not be argued that to notify an assured that the "unearned premium will be returned by T. Y. Brown, Agent," does not amount to a return of it. No more does the assertion that the notice does not constitute a tender of the unearned premium require support by way of discussion of the elements which go to make up a legal tender. It has been passed upon by this court in *Van Valkenburgh* v. *Lenox Fire Ins. Co.* (51 N. Y. 465).

In that case it was necessary for the defendant under its contract of insurance with the plaintiff either to refund or tender the unearned premiums, in addition to giving a notice of cancellation in order to terminate the policy. It claimed

before the court that its notice that the unearned premium would be returned to him satisfied its obligation in that respect, but the court held that holding the amount of the premium subject to the call of the insured was insufficient. The company was bound to seek him out and tender to him the whole amount due.

The order should be affirmed, with costs.

PARKER, Ch. J. (dissenting). The plaintiff has recovered a judgment against the defendant upon a policy of fire insurance, which the latter insists was not in force at the time of the fire, its claim being that the policy was canceled long before the fire occurred by the giving of notice that the defendant would cancel the policy on a day therein specified. Whether this notice of itself operated to cancel the policy is the question presented. The plaintiff insists that, in order to effect the cancellation in addition to the notice, it was necessary for the defendant to return or tender the unearned premiums. On the other hand, the defendant asserts that it was only required to give five days' notice of cancellation to accomplish that result.

This controversy must be settled by the contract between the parties. That part of it which relates to the subject of the cancellation of the contract reads as follows:

"*This policy shall be canceled at any time at the request of the insured,* or by the company, by giving five days' notice of such *cancellation.* If this policy *shall* be canceled, as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on *surrender* of this policy or last renewal, this company retaining the customary short rates, except that when this policy is canceled by this company *by giving notice,* it shall retain only the *pro rata* premium."

The standard policy, of which this forms a part, has been prepared under authority of law by men experienced in insurance contracts, and it is, therefore, fair to assume that the agreement may be treated as one prepared by men competent

to use language adequate to convey clearly and distinctly the views of the parties. In such case it is the rule that if the language of a statute or contract, read in the order of its clauses, presents no ambiguity, courts will not attempt, through transposition of clauses or ingenious argument as to the general intent, to qualify by construction its meaning. (*Doe* v. *Considine*, 6 Wallace, 458.)

The first sentence provides for the cancellation of a policy. It declares that "it shall be canceled   *   *   *   by the company by giving five days' notice of such cancellation." In other words, the underwriter, by its contract, reserved to itself the right to cancel the contract of insurance by a notice of five days. Nothing else is provided to be done. Notice alone shall be sufficient says the contract. The language is unambiguous. It admits of no debate and requires no construction. Words more apt to accomplish the cancellation of a policy by the giving of the five days' notice cannot well be imagined. Having provided for a cancellation of the policy, either by the request of the insured or upon notice given by the company, the next clause of the agreement proceeds to make disposition of the unearned premiums, in the event of the exercise of the option to cancel by either of the parties.

The opening phrase of the clause shows that what follows proceeds upon the assumption that the policy shall have been canceled before occasion arises for acting under its provisions. It reads, "If this policy shall be canceled as hereinbefore provided "— referring necessarily to the company's five days' notice —" the unearned portions of the premiums shall · be returned." When? At the time of the giving of the five days' notice of cancellation? Not at all; "on the surrender of the policy" is the occasion fixed by the contract for its return. The scheme of this portion of the contract, then, is to provide, *first*, for the cancellation of the policy — that is to be accomplished by the simple request of the insured, if he desires to cancel it, or by a five days' notice on the part of the company if it desires to terminate its obligation under the policy. The policy having been put an end to by cancellation, at the insist-

ence of one party or the other, then the situation of the parties
is such that the company has in its possession certain premiums
which it has not earned, and which it does not desire to earn,
and the other party has in his possession the policy of insur-
ance, no longer, of course, of use to him, and of no particular
value to the company, except that when it finally comes into
the company's possession it of itself furnishes evidence that
the unearned premiums have been paid to the insured.    With
this situation, then, the agreement undertakes to deal, and it
provides that upon the surrender of the policy the unearned
premium, whether at short rate or *pro rata* premium, depend-
ing upon which party brought about the cancellation, shall be
returned to the insured.    Practically, it says to the insured:
You return the policy to the place where you got it from and
the company will at once turn over the unearned premium to
which you are entitled under this contract.    This agreement
is so clearly expressed that there does not seem to be opportu-
nity for insisting that the language means something quite
different from what is suggested to the mind upon the first
reading.    And still other readings will not prompt the thought
that there is possibly any ambiguity.

It is suggested in the opinion of the learned trial judge in
the case of *Nitsch* v. *American Central Insurance Company*,
subsequently affirmed in this court without an opinion (152
N. Y. 635), that, under such a reading of the contract as on its
face it is apparent it should have, "a man might pay $1,000
for insurance to-day, receive a notice from the insurance com-
pany to-morrow which would have the effect to cancel his
policy in five days, and at the end of the week have no
remedy except an action at law against the company."    Such
a case could happen undoubtedly, but it is not likely to.
Courts cannot assume that insurance companies will act arbi-
trarily, or that they are so lacking in business prudence as to
be willing to acquire a reputation for practicing a wrong of
that character upon customers.    On the contrary, we must
assume that corporations, as well as individuals, intend faith-
fully to keep their contracts.    But were it our duty to indulge

22

in a totally different presumption, the situation would not be changed, for the court is without authority to make contracts for the parties.

The law-making power of the state, the legislature, has undertaken to provide for the creation of a standard policy of fire insurance for the protection alike of the insured and the insurer, and if the standard policy needs further amendment, relief must be sought from that source.

Prior to the passage of chapter 488 of the Laws of 1886, providing for a uniform contract of fire insurance to be used by fire underwriters within the state, there were two cases in this court, namely: *Van Valkenburgh* v. *Lenox Fire Ins. Co.* (51 N. Y. 465) and *Griffey* v. *New York Central Insurance Co.* (100 N. Y. 417), holding that the cancellation clause was not operative unless the company should tender or return to the insured the amount of the unearned premium. The cancellation clause in those contracts differs very materially from the one in question. It read as follows:

" This insurance may be terminated at any time at the request of the assured, in which case the company shall retain only the customary short rates for the time the policy has been in force. The insurance may also be terminated at any time at the option of the company on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired time of this policy."

Now, clearly, that agreement did provide, as the courts held, that two things were required to terminate the policy — *first*, the giving of the notice, and, *second*, the refunding of the unearned premium.

Now, after these decisions were made, the cancellation clause of the present policy was prepared, and it does not seem to be an intemperate use of the imagination to draw the inference that it was prepared in view of the decisions to which I have referred, and to meet them by establishing a contract which should make cancellation by the company less difficult. It is certainly difficult to see how they could have used language more appropriate to accomplish that result.

Counsel for the respondent insists that this question is no longer an open one in this court, but was put at rest by the affirmance in the *Nitsch Case* (*supra*).

It is true that at Special Term judgment went in favor of the plaintiff upon the ground, as appears from the opinion of the learned trial judge, that in order to effect a cancellation of the policy it was necessary to give the five days' notice, and in addition to return or tender the unearned premiums to the insured. But there was another ground upon which the affirmance of the judgment was required at the General Term and in this court, namely, that after the insured had received the five days' notice of cancellation from the general agent of the insurance company, which was a foreign corporation, he addressed to the corporation at its home office a letter of inquiry about it, and received such a reply as constituted a waiver of the notice which had been just sent out by the general agent, and thus it happened that the judgment of the Circuit rested upon a sure foundation and required affirmance.

The order should be reversed and a new trial granted, with costs to abide the event.

BARTLETT, J., reads for affirmance; HAIGHT, MARTIN and VANN, JJ., concur; PARKER, Ch. J., reads for reversal; O'BRIEN, J., concurs; GRAY, J., absent.

Order affirmed and judgment absolute ordered for plaintiff on stipulation, with costs.