SCHWARZCHILD & SULZBERGER CO. v. PHŒNIX INS. CO. OF HARTFORD.

(Circuit Court, S. D. New York. May 2, 1902.)

1. INSURANCE—CANCELLATION OF POLICY.

Plaintiff held a policy of insurance, issued by defendant company, which provided that it might be canceled by either party by giving the other five days' notice. Defendant's agent telegraphed plaintiff's authorized representative to cancel the policy, confirming the notice by letter, stating that defendant insisted on immediate cancellation. Plaintiff's representative delayed acting, and entered into correspondence with defendant and its agent, in an attempt to induce them to continue the policy in force; but the notice of cancellation was at no time withdrawn or modified, and a few days later defendant's agent again telegraphed imperative instructions to cancel immediately. Thereupon plaintiff's representative notified it of the cancellation and procured other insurance, but before the policy had been returned to defendant the property was destroyed by fire. Held, that under the terms of the policy the first notice operated as a cancellation, and the policy ceased to be in force five days after its receipt.

2. SAME—RETURN OF PREMIUM.

Under a policy of insurance, providing that it may be canceled by either party by notice to the other, and that in case of cancellation the unearned premium shall be returned "on surrender of the policy," it is not essential to the effectiveness of a notice of cancellation by the insured that the unearned premium be returned or tendered before the surrender of the policy.[1]

---

[1] See Insurance, vol. 28, Cent. Dig. § 510 [a, g].

William Vannamee, for plaintiff.
Wheeler H. Peckham, for defendant.

WALLACE, Circuit Judge. This is an action upon a policy issued by a Connecticut corporation, through an agent at Kansas City, insuring the plaintiff against loss by fire, in the sum of $50,000, upon property in the state of Kansas. The question in the case is whether there had been a cancellaton of the policy prior to October 6, 1899, the date of the fire.

The policy contains this provision:

"This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal,—this company retaining the customary short rate,—except that, where this policy is canceled by this company by giving notice, it shall retain only the pro rata premium."

The cancellation, if there was one previous to the fire, was effected by the telegrams and letters exchanged between Merriam, the local agent of the defendant, and Anderson, who had full authority to represent the plaintiff. The former was the agent of a number of insurance companies at Kansas City. The latter was an insurance broker at New York City, carrying a line of insurance amounting to several hundred thousand dollars with Merriam. There was an open account between them, and throughout the period of the correspondence between them there was a balance on Anderson's books to the credit of Merriam of over $2,000. Prior to September 20, 1899, there had been correspondence between Merriam and Anderson about the unwillingness of Merriam's companies to carry insurance upon the plant of the plaintiff at the existing rate of premium; and Merriam had been instructed by Magill, the general agent of the defendant, that the policy must be canceled. September 20, 1899, Merriam, apparently in reply to a telegram received from Anderson, sent Anderson a telegram as follows:

"No; our companies won't carry. Cancel Phœnix fifty thousand."

The same day Merriam wrote Anderson as follows:

"We had to reply to your telegram * * * that it would be necessary for us to call for the immediate cancellation of the 50,000 in the Phœnix of Hartford. It does not appear to us, from what information we can get from our insurance companies, that companies are open to write this risk at 1%. In fact, though we were enabled to hold the Phœnix on over the union meeting, since then they appear to be more anxious than ever, and have telegraphed us four times in four days about the policy. We regret very much to lose the business, but, on the other hand, when they insist upon an immediate cancellation we are powerless."

September 20th, Anderson, hoping to induce the defendant's general agent to countermand his instructions to Merriam, wrote to Magill, and on September 23d wrote Merriam as follows:

"We note your communication in regard to the Phœnix of Hartford's $50,000 policy. We wrote Mr. Magill a long letter, explaining this matter, and stating to him that we were now receiving applications from various companies to accept of this business at 1%. * * * We think he will,

no doubt, either advise you or ourselves of his intention to write the line. This we say in confidence."

September 27th Merriam wrote to Anderson as follows:

"Mr. Magill, of the Phœnix, has telegraphed us very urgently for their policy on this line, and it is necessary that it be promptly canceled. The last telegram we had from them was subsequent to your letter to them. * * * It is impossible to hold them on, as they do not deem that the rate is sufficient for the risk."

On October 3d Anderson wrote to Merriam as follows:

"Mr. Magill has made no reference to our letter regarding his policy. * * * We wrote Mr. Magill by last night's mail again, asking him if he had not decided to retain the policy."

October 4th Merriam sent the following telegram to Anderson:

"Cancel immediately Phœnix Hartford Schwarzchild. Your action is absolutely necessary."

Upon the same day he wrote to Anderson as follows:

"The special agent of the Phœnix of Hartford has been here twice to see us in reference to that policy, and is strenuously objecting to staying on so long after cancellation order has been given us. Owing to an urgent telegram from Mr. Magill, he insisted upon our notifying the insured of our decision to cancel, but this we did not do; simply wiring you that the case was urgent, and that there must be an immediate cancellation. This we beg to confirm."

On the same day Anderson wrote to Merriam:

"We have requested the insured to send us the policy, when we will have it returned to you."

On the same day he instructed his principal that the policy had been "ordered canceled," and procured a policy for $50,000 in another insurance company in substitution of the policy in suit.

It appears that on September 22d Merriam prepared a letter to Anderson which read as follows:

"We must insist upon an immediate and absolute cancellation of the general form policy—Phœnix insurance policy—on plant of Schwarzchild & Sulzberger Company in this city. This matter must have immediate attention."

This letter was prepared by Merriam because of instructions from Magill to wire Anderson, "insisting upon immediate return of the Schwarzchild & Sulzberger policy, regardless of rate or action of others." Merriam testifies to his belief that he probably sent its contents by telegram to Anderson. Anderson denies receiving either a letter or a telegram of this purport. The evidence does not authorize the conclusion that either the letter or the telegram were sent.

It was not necessary, to effect a cancellation of the policy, that it be surrendered by the plaintiff, though that circumstance would be quite conclusive evidence of a cancellation; and it suffices if there was a notification by Merriam to Anderson, which the latter understood, or should have understood, signifying an election by Merriam to terminate the insurance forthwith and unconditionally. If there was such a notification, five days thereafter the policy ceased to exist, and the plaintiff became entitled, upon surrendering it to the defendant, to a return of the unearned premium.

The correspondence between the two agents began with a telegram and letter from Merriam to Anderson, stating that the insurer would no longer carry the risk, and containing the instruction, "Cancel the policy." Read together, they constituted an explicit and unequivocal notification, although the terms were not formal or peremptory, as perhaps they would have been if the business relations between the correspondents had been other than they were. They informed Anderson that the defendant insisted upon an "immediate cancellation" of the policy. The instruction to "cancel the policy" was, in substance, a request to Anderson to procure it from the plaintiff and forward it to Merriam, as in no other way could he have been expected to cancel it. Anderson, doubtless, would have done this if he had not hoped to induce Merriam's principal to reconsider and recall the election to terminate. The subsequent correspondence shows that Anderson was delaying compliance in the hope of a favorable response from Magill, while Merriam was reiterating his original notification, and pointing out to Anderson the futility of delay. While the correspondence may suggest Merriam's desire to co-operate with Anderson so far as he could without prejudice to the defendant, it also suggests Anderson's purpose not to compromise Merriam with his principal, and it does not contain a word calculated to lead Anderson to believe that Merriam did not intend to abide by his original notification. Anderson continued to take the chances of delay until October 4th, but his action on that day in procuring a new policy in substitution of the old one shows that he then recognized that the old one was no longer in force. If he had merely instructed his principal that the policy had been ordered canceled, it could be plausibly urged that he did so because of Merriam's telegram of October 4th.

It is immaterial what phraseology was employed by Merriam in his communications to Anderson, so long as it conveyed notice to the latter of his intention to avail himself immediately and absolutely of the privilege to have the policy canceled. Fabyan v. Insurance Co., 33 N. H. 203; Emmott v. Insurance Co., 7 R. I. 563. That Anderson was not misled, and understood perfectly what Merriam meant, does not seem open to fair doubt.

It was unnecessary for the defendant to return or tender the unearned premium to accomplish a cancellation. The condition is carefully expressed to require the return of the premium only upon the surrender of the policy by the insured to the insurer. Straker v. Insurance Co., 101 Wis. 413, 77 N. W. 752; Norris v. Insurance Co. (S. C.) 33 S. E. 566, 74 Am. St. Rep. 765. The decision of the court of appeals of New York holding the contrary in respect to a similar condition is entitled to great consideration (Tisdell v. Insurance Co., 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765), but is not controlling upon this court; and the view of the minority of the court, expressed in the dissenting opinion, commends itself to me as presenting the better reasoning. The present policy is not a New York contract, and its construction does not depend upon the meaning of a statute of New York.

Judgment is ordered for defendant.