## Gosch *v.* Firemen's Insurance Company, Appellant.

*Insurance—Fire insurance—Payment of premiums—Broker—Cancellation of policy.*

Where an ordinary insurance broker places insurance for his client, and the company insuring delivers the policy to the broker, and the broker delivers it to his client, who pays to him the premium, the pay-

ment to the broker is payment to the company; and the company, after the receipt of the premium, cannot cancel the policy merely by giving five days' notice of its intention so to do. To avail itself of the right to cancel, reserved in the policy, it must not only give the required notice but must actually repay or tender payment of the unearned portion of the premium.

Argued Oct. 10, 1906. Reargued Dec. 12, 1906. Appeal, No. 170, Oct. T., 1906, by defendant, from order of C. P. No. 4, Phila. Co., March T., 1906, No. 2,706, on case stated in suit of Samuel M. Gosch and Emanuel M. Gosch, trading as Gosch Brothers & Company, v. Firemen's Insurance Company of Newark. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Case stated to determine liability on a policy of fire insurance.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiffs on case stated.

*Frank R. Shattuck*, for appellant.—The return of the premium was not a prerequisite of the cancellation of the policy: Schwarszchild & Sulzberger Co. v. Ins. Co., 124 Fed. Repr. 52; El Paso Reduction Co. v. Ins. Co., 121 Fed. Repr. 937.

An actual return of the premium is not necessary when the premium was in fact never paid, though credit therefor may have been given : Bergson v. Builders' Ins. Co., 38 Cal. 541 ; Von Wein v. Scottish Union & Nat. Ins. Co., 52 N. Y. Sup. Ct. 490 ; Van Wert v. St. Paul Fire & Marine Ins. Co., 8 App. Div. 107 (40 N. Y. Sup. Ct. 463) ; Stone v. Franklin Fire Ins. Co., 105 N. Y. 543 (12 N. E. Repr. 45) ; Mutual Ins. Co. v. Bermond, 45 Ill. App. 22.

*Morris Wolf*, with him *Horace Stern*, for appellees.—A fire insurance company under the conditions contained in the standard form of policy, which it has issued, cannot cancel the same without payment or tender of the unearned portion of the premium in a case in which it has waived the previous surrender of the policy : Hartford Fire Ins. Co. v. McKenzie, 70

Ill. App. 615 ; Marshall v. Reading Fire Ins. Co., 78 Hun, 83 (29 N. Y. Supp. 334) ; Chrisman & Sawyer Banking Co. v. Hartford Fire Ins. Co., 75 Mo. App. 310 ; Hartford Fire Ins. Co. v. Cameron, 45 S. W. Repr. 158 ; Tisdell v. Ins. Co., 155 N. Y. 163 (49 N. E. Repr. 664) ; Stone v. Franklin Fire Ins. Co., 105 N. Y. 543 (12 N. E. Repr. 45) ; Philadelphia Linen Co. v. Manhattan Fire Ins. Co., 8 Pa. Dist. Rep. 261 ; First Nat. Fire Ins. Co. v. Isett, 11 W. N. C. 558 ; Baldwin v. Penna. Fire Ins. Co., 206 Pa. 248.

When a fire insurance company delivers a policy to a broker to deliver to the insured, without demanding payment of the premium from the broker, and the broker delivers the policy to the insured, who thereupon pays the premium thereon to the broker, this constitutes a payment of the premium to the company : Arthurholt v. Ins. Co., 159 Pa. 1 ; Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149 ; Lycoming Fire Ins. Co. v. Ward, 90 Ill. 545 ; Indiana Ins. Co. v. Hartwell, 123 Ind. 177 (24 N. E. Repr. 100) ; Gosch v. Ins. Co., 44 Ill. App. 263 ; Gaysville Mfg. Co. v. Phœnix Mut. Fire Ins. Co., 67 N. H. 457 (36 Atl. Repr. 367) ; American Fire Ins. Co. v. Brooks, 83 Md. 22 (34 Atl. Repr. 373) ; Landes v. Safety Mut. Fire Ins. Co., 190 Pa. 536 ; Frost v. North British, etc., Ins. Co., 77 Vt. 407 (60 Atl. Repr. 803).

OPINION BY HEAD, J., May 13, 1907 :

From the case stated, which was agreed on by the parties and filed in the court below, the following material facts appear. On or about May 24, 1905, the defendant company executed and delivered to the plaintiffs its policy of insurance whereby it agreed to indemnify them from loss or damage by fire to the property therein described for the term of one year, viz.: from May 22, 1905, to May 22, 1906. The plaintiffs had made application for this insurance through one Darrah, an ordinary insurance broker doing business in the city of Philadelphia, and to him the defendant gave its executed policy to be by him delivered to the plaintiffs. The policy was duly delivered and the plaintiffs, at the time of delivery, paid to Darrah the full amount of the premium due and called for in the policy ; the latter, however, never paid over this premium or any part of it to the company or any of its authorized agents, and later

left the jurisdiction.  The policy was of the usual form commonly known as a "standard policy" and contained the following provision on the subject of cancellation: viz.: "This policy shall be cancelled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice, it shall retain only the pro rata premium."

On July 26, 1905, the company, through its authorized agents in Philadelphia, sent to the plaintiffs a formal five days' notice of its intention to cancel their policy.   After the expiration of the five days the company demanded from the plaintiffs the surrender of the policy, but at the same time refused to repay any part of the premium alleging, as a reason for such refusal, that it had not received the premium or any part of it from Darrah, whereupon the plaintiffs refused to surrender the policy.

The parties continued to occupy this attitude towards each other until, in November, 1905, a fire occurred resulting in damage to the property covered by the policy, and it is agreed that, if the policy was then in force, the extent of the company's liability thereunder is $558.04.

The plaintiffs brought this action to recover that amount, contending that the notice of cancellation was ineffective to extinguish the contract of insurance because the company had failed, before the date fixed in the notice, to repay or tender payment of the unearned premium.   The company denied any liability on the ground (a) that, under no construction of the policy provision, wherein its right to cancel at its option was reserved, could such payment or tender be deemed to be a part of the act of cancellation when, in fact, the premium had not been received by it; and on the broader ground (b) that the right to cancel was wholly independent of the obligation to repay the unearned premium, which obligation came into existence only after the act of cancellation had been completed and, even then, was conditional on the surrender of the policy

by the insured.   The learned court below rejected both grounds of defense and entered judgment for the plaintiffs, whereupon this appeal was taken.

Was the payment of the premium by plaintiffs, at the time of the delivery of their policy, to the broker who delivered it, a payment, in the eyes of the law, to the company ?   It is agreed that the broker was the medium selected by the company for the delivery of its policy to the insured.   It could have selected any other method of delivery, but chose that one.   The purpose of the delivery was to put the policy into force thereby.   The act of delivery was apparently the last prerequisite necessary to convert the paper policy into a living contract of indemnity. The very terms of the agreement contemplated a cash payment of the premium and the possession of the policy would be prima facie evidence of its payment.   Without the payment of the premium the agreement would be nudum pactum and the policy in the hands of the plaintiffs a useless paper instead of a substantial protection against loss by fire ; in other words, the act of delivery would be incomplete and ineffective.   It is difficult to understand, therefore, why the authority to deliver the policy did not carry with it the authority to receive the premium.   But surely the receipt of the premium by the broker, if not thus in fact authorized, was within the apparent scope of his authority.   The possession by him of the executed policy with authority to deliver would naturally invite a payment of the premium to him, and the company must be held to have contemplated this probable result when it turned its policy over to him.   In Lebanon Mutual Ins. Co. v. Erb, 112 Pa. 149, a case in which the facts were more favorable to the contention of the defendant than in the one before us, because the policy contained an express provision that it should be null and void "if the assured shall have neglected to pay the pre-- mium," Mr. Justice CLARK thus states the law : "On the 5 June, 1882, the policy in suit, containing an acknowledgment of the receipt of $30.00, the cash premium, was by the company executed and forwarded to Clifford B. Pease, the Boston broker, who was thus intrusted with the delivery.   Although not the agent of the company, in any general sense, he thereby became the agent for this particular purpose upon payment of the premium.   The agency is necessarily implied from the na-

ture of the transaction itself; the policy was placed in his hands
for the very purpose of delivery, and the delivery, by its express
terms, was conditioned upon payment of the premium; it is
clear, therefore, that the authority of Pease was limited ac-
cordingly. . . . The company might have retained the policy
until the premium was paid, or they might have sent it directly
to the insured, with instructions to remit the amount; in either
case, the contract would have been ineffective until the condi-
tion of the policy had been complied with. But they chose to
send it to Pease, with an acknowledgment of payment, for de-
livery to the insured, and this act of the company must be taken
as an authorization of Pease to receive the money."

In the later case of Arthurholt v. Fire Ins. Co., 159 Pa. 1,
which differs from this only in the fact that there the broker
had acted in the same capacity several times, the opinion of
the court and the vigorous language used by the late Mr. Jus-
tice DEAN in expressing it indicate no disposition on the part
of the court to take any backward step on this subject. The
conclusion thus reached seems to be in harmony with the deci-
sions of the courts of many states: Lycoming Fire Ins. Co. v.
Ward, 90 Ill. 545; Indiana Ins. Co. v. Hartwell, 123 Ind. 177;
Allen v. German Am. Ins. Co., 123 N. Y. 6; Gosch v. State Mut.
Fire Ins. Co., 44 Ill. App. 263; Gaysville Mfg. Co. v. Phœnix
Mut. Fire Ins. Co., 67 N. H. 457.

The learned counsel for appellant frankly concedes that the
delivery of the policy by the broker and his receipt of the pre-
mium put the policy into full force; so that if a fire had oc-
curred before the alleged cancellation the company could not
have successfully denied its liability. But, he argues, the law
is so, not because it regards payment to the broker as payment
to the company, but because the latter is estopped from assert-
ing or is held to have waived its right to assert that the premium
has not in fact been paid to it.

Whilst we do not understand the weight of the cases cited
to rest alone on the doctrine of estoppel or waiver, yet even if
we so concede, the situation of the appellant would not be
helped; for if, under the conditions now before us, the law
declares that the company may not be heard to allege nonpay-
ment of the premium to escape the greater obligation of in-
demnity, for the same reason must it turn a deaf ear to the

same allegation, when advanced to escape the lesser obligation to return the unearned premium in case of cancellation. We are impelled, therefore, alike by reason and authority, to hold that for all the purposes of this case, the premium on the policy of the plaintiffs was paid, and the rights and obligations of the company, under the cancellation clause quoted, must be determined just as if the money of the plaintiffs had been paid directly into the home office.

The plaintiffs, then, having paid the premium for the entire term, could the defendant, at its own pleasure, effect a complete extinguishment of the insurance contract, merely by giving notice of its determination to cancel, without, at the same time returning or tendering the unearned portion of that premium? Where a contract with mutual undertakings has been entered into by two parties and fully performed by one of them, we may certainly say, speaking generally, that the other party could not successfully invoke the aid of any court in an effort to rescind, until he had returned or tendered the return of any valuable thing he had received by reason of the contract. To permit him to retain the benefits and at the same time repudiate the burdens of his own agreement would be highly unconscionable and shocking to our sense of natural justice. It would be out of harmony with some of the fundamental principles on which our entire system of jurisprudence is built. Of course where the right to cancel has been expressly reserved in the contract itself, then the extent of the right and the conditions upon which it may be exercised must be determined by a reference to the contract rather than to principles of general law. Turning, then, to the language of the agreement in which the parties have undertaken to state their respective rights and duties, if we find it susceptible of two constructions, one in harmony with, the other in opposition to, those general principles already referred to, a sound discretion would seem to invite us to accept the former and reject the latter; just as in ascertaining the true meaning of a doubtful clause in a will, the courts incline to that construction which would vest the estate rather than leave it contingent, which would give the inheritance to the heir rather than to a stranger. Taking up, then, the provision of the policy on this subject and looking at it as a whole, we may confidently say that it contemplates a complete and

effective destruction of the contractual relation at the instance of either party; and that to accomplish this end the party moving must do two distinct and separate things, the object in view undeniably being that, when the cancellation shall have been completed, both parties will have been restored, as far as possible, to the conditions existing before the contractual relation began. If the destruction of this relation be begun by the assured, he must give notice to the other party and surrender his policy, which proclaims the existence of the relation he would now destroy; if begun by the company it must also give notice and repay or tender payment of the unearned premium in its hands. The right reserved to each party is but a single one, viz.: the right to cancel; and the cancellation contemplated is not a partial but a complete one. The obligation imposed on the party moving to cancel is, looking broadly at the entire contract provision, also single, viz.: the restoration of the other party, as far as may be, to the situation occupied before the contractual relation began. True, this involves the performance or tender of performance of another act besides the giving of notice; but it does not necessarily follow that such performance or tender may be totally dissevered in time from, and thus rendered wholly independent of, the giving of the notice. Such a construction of the policy provision, although strongly urged on us by the learned counsel for appellant, is, at best, a doubtful one. More than this he can hardly claim for it in light of the fact that it has been deliberately rejected by the courts of last resort of most of our sister states. The argument supporting it, as he agrees, has been stated, as forcibly as it can be, in the dissenting opinion of Chief Justice PARKER in Tisdell v. New Hampshire Fire Ins. Co., 155 N. Y. 163. An examination of this opinion seems to show that its conclusions are reached rather from a critical analysis of some of the language of the policy provision and the order in which its sentences are collated, than from a broad view of the entire provision and a consideration of the nature of the object to be accomplished thereby. The following language from the majority opinion clearly indicates that the question must now be considered as settled in that jurisdiction. " The question presented on this appeal is no longer an open one in this court. It was decided in Nitsch v. American Central Ins. Co., 152 N. Y. 635, affirmed

in this court, without an opinion.    In that case, as in this one, the question presented was, whether the provision of the New York standard policy of fire insurance relating to the cancellation of a policy at the instance of the company, requires, that in addition to giving the five days' notice, the company must return or tender the unearned premium, in order to effect a cancellation?    The answer was in the affirmative."    In an elaborate discussion of the whole subject to be found in Cooley's Briefs of Insurance, wherein all of the cases from the various jurisdictions are cited and considered, the general rule to be drawn from them is thus stated on page 2801 :  " The general rule is that under such a provision, unless waived, the repayment of such proportion of the premium is essential to a valid cancellation, and notice without such repayment or a tender of the amount is ineffectual. . . .'   There must be an actual repayment or tender; a mere promise to pay, or request to call for the amount due, or notice that the money is subject to insured's order, being insufficient."   The line of reasoning adopted by the many courts from whose decisions the above rule has been drawn, is well exemplified in the opinion in the case of Chrisman & Sawyer Banking Co. v. Hartford Fire Ins. Co., 75 Mo. App. 310, thus :  " In the recission of a contract by one party, it is a necessary condition precedent to such recission to place the other party in statu quo ; to restore to him whatever may belong to him by reason of bringing the contract to an end.    Within this rule it has been repeatedly held that before an insurance company can make an effective cancellation, it must return or tender the unearned premium. . . .   But it is said that the particular policy provided that the unearned premium was to be returned ' on surrender of the policy,' and as the policy was not surrendered it was not necessary to return the premium.   We think the return of the premium and surrender of the policy, under the terms of the contract, were concurrent acts ; that neither could be demanded without the other.    But as the defendant was the party seeking the cancellation it was its first duty to have tendered the unearned premium on a surrender of the policy.   It would then have done all that the contract required it to do, in order to place the assured in statu quo."

Even if, then, the question could be regarded as an open one

with us we have endeavored to show—at the risk of unduly lengthening this discussion—that in affirming the judgment, entered by the learned trial court, we but follow a line of reasoning the soundness of which has been attested by the decisions of many tribunals of highest authority.   But we cannot regard the question as an open one because we believe it to have been ruled in the case of Baldwin v. Penna. Fire Ins. Co., 206 Pa. 248.   In that case, the suit being on a policy similar to the one now under consideration, the company in its affidavit of defense set up " that the policy in suit had been surrendered and returned for cancellation and actually had been canceled on December 8, 1897."   We have not the record actually before us, but take this statement from the paper-book of the appellant which we have carefully examined.   The trial court held that the contract of insurance had never been completed, and the policy had never gone into force and on this ground nonsuited the plaintiff.   This court affirmed the judgment for the same reason.   But the Supreme Court held that the contract had been fully completed and, therefore, the policy was in force at the time of the fire unless it had been canceled meantime as the company had alleged.   As the case was sent back to be retried the court could not well avoid disposing of this important defense set up by the averment of the affidavit quoted, and we think they did it in no uncertain manner. Speaking for the court, Mr. Justice DEAN, after pointing out the character of evidence necessary to show a cancellation at the instance of the insured, turns to the question now before us and says : " The company gave no notice of its intention to cancel as required by the contract nor did it return nor offer to return five-sixths of the premium, a preliminary to cancellation as the contract required.    We can take no other view of the evidence, than that the contract of indemnity was complete when Hatfield and the agent both agreed to it and the agent, by consent of Hatfield, retained for the company the unearned premium.   Was the contract afterwards rescinded or canceled by the company or by consent of Foster, the attorney (for the insured)?   The company could cancel it just one way at any time, that was, by five days' notice to the representative of the estate of its intention to do so and return of five-sixths of the premium ; it gave no notice and offered to return no premium."

We are earnestly urged by the learned counsel for the appellant to regard this clear and emphatic statement of the law, upon the very point now under consideration, as merely dictum, but we are wholly unable to do so in the light of the fact that the cancellation of the policy was a defense distinctly raised by the pleadings, and the further fact that in the judgment entered, in which the entire court concurred, we find the following : " On a retrial it is directed that the law be announced as we have indicated," etc.

Looking at the question from every point of view we can reach no other conclusion than that the payment or tender of the unearned premium was an essential part of the act of cancellation, and that without it the mere notice by the company of its intention to cancel was ineffective to destroy the policy obligation. The assignments of error must, therefore, be overruled.

Judgment affirmed.