GRANT LUMBER CO. v. NORTH RIVER INS. CO. OF NEW YORK.

(District Court, D. Idaho, N. D.   July 11, 1918.)

1. INSURANCE ⊕═230—FIRE INSURANCE—NEW YORK STANDARD POLICY—CANCELLATION—RETURN OF UNEARNED PREMIUM.
     The provision of the New York standard fire insurance policy relating to its cancellation by the insurer upon five day's notice requires that the insurer return or tender the unearned premium in order to effect a cancellation.

2. INSURANCE ⊕═146(3)—POLICY—CONSTRUCTION FAVORABLE TO INSURED.
     Policies of fire insurance, if ambiguous or uncertain in terms, will be construed favorably to the insured.

3. COURTS ⊕═366(15)—FEDERAL COURTS—CONSTRUCTION OF STATE STATUTE.
     Where form of fire policy is prescribed by state statute, meaning of policy calls for construction of statute, so that decision of highest court of state will control.

4. INSURANCE ⊕═229(2)—FIRE INSURANCE—CANCELLATION OF POLICY—NOTICE.
     Under a standard New York fire insurance policy authorizing its cancellation upon five days' notice, no particular form of notice is required; but insured must have actual knowledge of insurer's intention to cancel, or such intention must be so expressed as to give notice to ordinary man in exercise of ordinary care.

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INSURANCE ⚮229(2)—FIRE INSURANCE—CANCELLATION OF POLICY—NOTICE.
    Under a fire insurance policy in a New York standard form entitling the insurer to cancel it on five days' notice, the insurer's draft indorsed by the insured, and its "receipt" signed by the insured, though both stating that the policy was thereby canceled, were not equivalent to a notice of cancellation.

6. CONTRACTS ⚮93(2)—KNOWLEDGE OF CONTENTS—PRESUMPTION—SIGNATURE.
    The general rule is that one signing a written instrument will not be heard to say that he did not read it, but will be conclusively presumed to have had knowledge of its contents.

7. CONTRACTS ⚮94(4)—FALSE REPRESENTATIONS—SIGNATURE TO WRITTEN INSTRUMENT—EFFECT.
    One signing a written instrument without reading it, upon a false representation by the other party as to its contents or scope, is not bound thereby.

8. INSURANCE ⚮229(2)—FIRE INSURANCE—NOTICE OF CANCELLATION—DRAFT AND RECEIPT.
    The manager of a company insured under a fire policy authorizing its cancellation on five days' notice, by accepting and indorsing the insurer's draft in settlement of a loss and by signing its receipt without reading them, was bound by their contents only in so far as they were in the nature of a draft or a receipt, and not by a stipulation as to extraneous matter, such as express statement therein that policy was thereby canceled, and such express statement was therefore insufficient as notice of cancellation.

At Law. Action by the Grant Lumber Company, a corporation, against the North River Insurance Company of New York, a corporation. Judgment for plaintiff.

C. H. Potts, of Cœur d'Alene, Idaho, for plaintiff.
J. F. Ailshie, of Cœur d'Alene, Idaho, and E. Eugene Davis, of Spokane, Wash., for defendant.

DIETRICH, District Judge. On April 1, 1917, through the agency of the Rossi Insurance & Investment Company of Wallace, Idaho, the defendant issued its fire insurance policy for $8,000, covering the plaintiff's lumber manufacturing plant at Harrison, Idaho. A few days later, on April 27th, there was a loss by fire, which, after adjustment, was settled by the payment of $3,572.13, on or soon after May 31st. On July 27th the insured property was entirely destroyed by fire whereupon adjusters, representing the defendant as well as other insurance companies, adjusted the loss; but defendant refused to make settlement, upon the ground that its policy had been canceled in connection with the settlement of the first loss; hence this suit. The amount of the loss being admitted, the controlling, and indeed the only, question is whether or not the policy in suit was in force at the time of the second fire, or had been canceled. Trial by jury has been waived.

In support of its claim of cancellation the defendant relies upon a draft accepted by plaintiff in settlement of the first loss, and a receipt signed by it at the same time. The contention is that the instruments constituted notice, under a clause of the policy (a New York standard form) authorizing cancellation upon five days' no-

tice, and also that they amounted to a mutual agreement of cancellation. When the first loss was adjusted, there was no suggestion that the policy would be canceled, and so far as appears such a consideration in no wise entered into the question of the amount for which settlement was to be made; nor, indeed, was there any reason why such a matter should have been considered, for admittedly either party had the right upon its own motion and without the consent of the other to cancel the policy at any time. Defendant consummated the settlement through its agent, the Rossi Company, and had no direct communication with the plaintiff. This agency also represented other companies carrying insurance upon the plant, the total amount of which was $50,000, and handled their settlements, as well as that of the defendant. Accordingly, of date June 7, 1917, it wrote the following letter to the plaintiff, inclosing therewith, among other papers, the draft and receipt in question:

"Wallace, Idaho, June 7, 1917.

"Grant Lumber Company, Harrison, Idaho—Gentlemen: We inclose herewith drafts in payment of your recent loss, as follows:

Norwich Union Fire Ins. Society.................................$1,116.29
Western Assurance Co......................................... 669.78
British America Assurance Co.................................. 669.77
North River Ins. Co.......................................... 3,572.13
Northern Ins. Co............................................. 1,116.29
Northwestern F. & M. Ins. Co................................. 1,339.55

"We will forward the balance to you as soon as received. The Northwestern Fire & Marine Insurance Company have asked that we cancel their policy, which was issued just a day or two prior to the fire, and will therefore ask that the same be returned to us, and we will endeavor to place the insurance with another company, if desired.

"Very truly yours, Rossi Insurance & Investment Company,
"By R. S. Clough."

The item "North River Ins. Co. $3,572.13" refers to the loss under the policy in suit. It will be observed that the writer of the letter expressly calls the attention of the plaintiff to the decision of one of the companies to cancel its policy, but makes no suggestion that such was the desire of the defendant here. Manifestly, any one reading the letter would naturally draw the inference that all the companies named, other than the Northwestern, desired or were willing that their policies should continue in force. Presumably it was with such an impression that the manager of the plaintiff company turned to the inclosed draft and receipt covering the settlement, the amount of which had already been agreed upon. The draft is as follows:

"To the North River Insurance Company,

"374 Pine St., San Francisco, Cal.

"Claim, $3,572.13.                                    Claim No. 2102
"Discount, $———.                                    May 31, 1917.
"Draft, $3,572.13.

"Pay to the order of Grant Lumber Company the sum of three thousand five hundred seventy-two and 13/100 dollars, in full satisfaction, compromise, and discharge of all claims against the North River Insurance Company for loss and damage by fire which occurred on the 20th day of April, 1917, to property covered under policy No. 2031749 issued at Wallace, Idaho, agency, and in

consideration of said payment the said policy is hereby canceled and surrendered.                        W. W. Alverson, Manager Pacific Department.
"E. W. Williams, Counter Signature.
   "Examined E. W. W."

It bore the following printed indorsement, which the plaintiff signed:

"Payee must sign this discharge with pen and ink.
"All claims and demands whatsoever against the North River Insurance Company connected with the within-mentioned loss, are released and discharged."

The receipt is as follows:

"Receipt.

"The North River Insurance Company
"374 Pine St., San Francisco, Cal.

"Claim, $3,572.13.                                    Claim No. 2102.
"Discount, $——.
"Draft, $3,572.13.                                    May 31, 191—.

"Grant Lumber Company hereby acknowledges the receipt of three thousand five hundred and seventy-two and 13/100 dollars, in full satisfaction, compromise, and discharge of all claims against the North River Insurance Company for loss and damage by fire which occurred on the 27th day of April, 191—, to property covered under policy No. 2031749 issued at Wallace, Idaho, agency, and in consideration of the said payment the said policy is hereby canceled and surrendered.                      Grant Lumber Co., by E. Grant, Prest.
                                                      "JAP"

The plaintiff's manager, who signed the instruments, testified that he did not read the draft or the receipt, at least did not read them carefully or in full, and did not know that they contained any provision relating to the cancellation of the policy, and no doubt is entertained that such is the fact. It is further true, I think, that if the plaintiff had known that defendant desired to cancel the policy it would have procured other insurance. Except such notice as is imported by the draft and receipt, no intimation was given to the plaintiff, until after the plant was destroyed by the second fire and an adjustment of the loss had been made upon behalf of the defendant as well as the other companies, that cancellation was desired or claimed. No request had ever been made that plaintiff deliver up the policy, nor had there ever been any offer to return any part of the unearned premium. True, the defendant now contends that it was under no obligation to make any demand or tender; but it is to be noted that, after the loss had occurred and it began to claim cancellation, it made a tender (of an insufficient amount) and requested return of the policy.

Was the policy canceled pursuant to the provision authorizing cancellation upon five days' notice? That provision is as follows:

"This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy, or last renewal, this company retaining the customary short rate, except that, when this policy is canceled by this company by giving notice, it shall retain only the pro rata premium."

I find as a fact that the full premium upon the policy was paid to the defendant. True, the payment was actually made by the Rossi Company, and by it credit extended to the plaintiff; but in extending the credit the Rossi Company did not act as the defendant's agent. In effect the plaintiff borrowed the money from the Rossi Company, and then paid it to the Rossi Company as agent, and it in turn paid it over to its principal, the defendant, the result being that plaintiff's debt to the defendant was extinguished, and it became the debtor of the Rossi Company.

[1-3] With much earnestness the defendant argues that notice of cancellation, if given, is not to be held ineffective because there was no return or tender of the unearned portion of the premium. The question has frequently been the subject of consideration in the courts, and further discussion would be profitless. Admittedly there is a sharp conflict in the decided cases; the preponderance being, as I think, with the plaintiff. Such was the conclusion reached by the New York Court of Appeals in Tisdell v. New Hampshire Fire Ins. Co., 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765. Based largely upon a critical analysis of the language of the policy provision, the contrary view is presented in a dissenting opinion; but I am better content with the conclusion of the majority. When we consider the harshness of the view that a party whose contract obligations are unperformed can at will terminate the contract without making restitution to the party who has fully performed, the intent so to stipulate ought not to be found, unless it is clearly expressed in language which leaves no room for doubt. If defendant's construction of the policy be adopted, it could at any time terminate the responsibility it had been fully paid to assume, retain the unearned premium until demanded, and then draw the insured into a controversy touching a matter which might very well be too small to warrant the expense of litigation. In the present case defendant, having held the unearned premium for two months after the alleged cancellation, tendered a portion of it and raised an issue as to the balance. In support of the rule of the Tisdell Case the following, out of many decisions, may be cited: Buckley v. Citizens' Ins. Co., 188 N. Y. 399, 81 N. E. 165, 13 L. R. A. (N. S.) 889; Southern Ins. Co. v. Williams, 62 Ark. 382, 35 S. W. 1101; Peterson v. Hartford Fire Ins. Co., 111 Ill. App. 466, reversed without reference to this question in 209 Ill. 112, 70 N. E. 757; Gosch v. Firemen's Ins. Co., 33 Pa. Super. Ct. 496; Phœnix Assur. Co. v. Munger, etc., Co., 92 Tex. 297, 49 S. W. 222; Chadbourne v. German-American Ins. Co. (C. C.) 31 Fed. 533; Ins. Co. v. Raden, 87 Ala. 311, 5 South. 876, 13 Am. St. Rep. 36; John R. Davis Lumber Co. v. Hartford F. Ins. Co., 95 Wis. 226, 70 N. W. 84, 37 L. R. A. 131. But see Straker v. Phenix Ins. Co., 101 Wis. 413, 77 N. W. 752; Manlove v. Commercial, etc., Co., 47 Kan. 309, 27 Pac. 979; Cassville Roller Milling Co. v. Ætna Ins. Co., 105 Mo. App. 146, 79 S. W. 720; Continental Ins. Co. v. Daniel (Ky.) 78 S. W. 866; Taylor v. Insurance Co. of North America, 25 Okl. 92–94, 105 Pac. 354, 138 Am. St. Rep. 906. The contrary view finds support in the following, as well as other, cases: Schwarzchild et al. v. Phœnix Ins. Co. (C. C. S. D. N. Y.), 115 Fed.

653; Id., 124 Fed. 52, 59 C. C. A. 572; El Paso Reduction Co. v. Hartford Ins. Co., (C. C.) 121 Fed. 939; Mangrum v. Law, Union & Rock Ins. Co. (Cal.) 157 Pac. 239; German Union Fire Ins. Co. v. Clark, 116 Md. 622, 82 Atl. 974, 39 L. R. A. (N. S.) 829, Ann. Cas. 1913D, 488.

While it is stated in the defendant's brief and in some of the cases cited that the federal courts have uniformly held that the return of the premium is unnecessary, only three federal cases have been called to my attention, and one of these, the Chadbourne Case, seems to hold with the plaintiff. It is pertinent to add that, notwithstanding the conflicting views of courts of last resort, of which the defendant doubtless has had knowledge, it persists in the use of this form of policy, ambiguous though it has been found to be. There is every reason, therefore, for applying the familiar rule that contracts of this character, if uncertain, will be construed favorably to the insured. If, as was suggested at the hearing, the form is prescribed by the statutes of New York, and the defendant is unauthorized to change it or use a different form, then in effect the inquiry is as to the meaning, not of the contract, but of the statute, of which the policy is merely a transcript, and the decision of the highest court of the state should control, under the well-known rule that the construction placed upon a local statute by the courts of the state is binding upon the federal courts.

[4, 5] It is also thought that defendant failed to give the requisite notice. Granted that no particular form of notice is required, still it must be shown either that the insured has actual knowledge of the insurer's intention to cancel, or that such intention has been so expressed as to give notice to the ordinary man, in the exercise of ordinary care. As already stated, the plaintiff did not have actual knowledge, and under the circumstances it cannot be charged with carelessness in failing to take notice. The carelessness was upon the part of the defendant in employing means better suited to conceal than to reveal its intent. It would have been a very simple thing for it to give a plain, unequivocal, direct notice of its desire to cancel. It had a form of "draft" and of a "receipt," and presumably it had a form of notice. Instead of giving such notice, what did it do? It first agreed with the plaintiff upon the amount of the loss, and, it is to be presumed, directly or indirectly promised to make settlement accordingly. So far as appears, there was no suggestion or intimation that it intended to cancel the policy. In due time it caused its agent to transmit, not a notice, but a draft and a receipt, inclosed with a letter expressly notifying the plaintiff of the cancellation of another policy, but with no suggestion of a purpose to cancel the policy in suit. With this letter before him, impliedly representing that but one policy was to be canceled, the plaintiff's manager turned to the formal papers, upon which the defendant now relies as constituting notice or contract. Upon its face he saw that one of the papers was labeled "draft," and generally it had that appearance. It was for the correct amount, appropriately referred to the loss, and named the plaintiff as payee. It is submitted that in the ordinary transaction of business, not once in a hundred times does the ordinary business man

carefully read a check or draft in full. It is sufficient that it appears to be a check or draft, and that he has knowledge of the amount and the names of the payee and maker. So it was not a want of care in this case for the plaintiff's manager to fail to observe a clause near the end of the draft, purporting to cancel the policy. When he turned the "draft" over to make the necessary and usual indorsement, he was confronted, not with a notice that the policy was to be canceled; but, in harmony with the implication of the letter of transmittal, he was advised that he "must sign this discharge," which reads:

"All claims and demands whatsoever against the North River Insurance Company connected with the within-mentioned loss are released and discharged."

This he could readily sign, because it was in accord with his understanding of the settlement. There was nothing to put him upon his guard or to suggest cancellation. He turned to the other paper, a printed form, conspicuously headed "Receipt." It was in the form of a receipt, and was apparently in substance the same as the indorsement upon the draft. Again, if to the plaintiff's conduct we apply the standard of ordinary business care and caution, its officers were not guilty of negligence in failing to read the instrument to the end and thus discovering the clause relating to cancellation.

[6-8] Defendant, of course, invokes the general rule that one who signs a written instrument will not be heard to say he did not read it, but will be conclusively presumed to have had knowledge of its contents. This rule, however, is not unqualified. There is the further familiar principle that where one signs an instrument without reading it, upon a false representation by the other party as to its contents or scope, he is not bound. Suppose that in this case, instead of writing the letter and using the forms labeled "draft" and "receipt," an agent of the Rossi Company had gone personally to the plaintiff's office to make settlement, and there made representations which were expressed or clearly implied by the letter and the printed forms. He would have said:

"I have come to make settlement of your recent fire loss upon six of the policies you hold [naming them]. One of these policies, and only one, the Northwestern, is to be canceled. Here is the draft of the North River Company for $3,572.13, the amount we agreed upon, bearing a printed release on its back, which you are to sign. Here is a formal printed receipt, which you are to sign."

Would any ordinarily prudent and cautious business man have stopped to read the draft in full, or the receipt, or have suspected that they were anything other than what they were represented to be? The defendant placed two papers before the plaintiff's officers, upon which it put its own construction by calling one of them a draft and the other a receipt. It so plainly labeled them, and the plaintiff had the right to rely upon such construction and representation. In accepting the draft and signing the receipt without reading them, its manager was bound by their contents, in so far, but in so far only, as such contents were in the nature of a draft or a receipt, and not by a stipulation upon a matter wholly outside the ordinary scope of

such instruments. Receipts and drafts are in daily use and their general tenor is well known. They may differ slightly in form, but in substance they are the same. They are signed and accepted with little attention to their precise phraseology. There is little more reason to require that they be read in full, than that one should read the printed matter upon a silver certificate or national bank note before accepting it. Such being the common practice, to hold that the plaintiff here is bound by an interpolated clause upon a subject wholly foreign to the nature of either a draft or a receipt, and touching which there had been no discussion between the parties, would be to sanction a fraud. I do not intimate that the defendant or its agents intended to deceive. It may very well be that the Rossi Company, as well as the plaintiff, was in ignorance of the defendant's desire to cancel the policy. The means employed by the defendant to give notice of its intention to cancel were so inappropriate that it would not be strange if the agent, as well as the insured, failed to take notice of its intention. But whether actual or only constructive fraud the result is the same. I am unwilling to give place to a rule which would write "caveat" upon every draft and receipt, and put a premium on suspicion and distrust. If what the defendant did was insufficient to charge the plaintiff with notice, by a parity of reasoning there could have been no mutual consent. Admittedly no consideration passed to the plaintiff.

Relief granted as prayed for in the complaint.